**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| | ) | |
| NATIONAL COMMUNITY | ) | |
| REINVESTMENT COALITION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-861 (RCL) |
| | ) | |
| NOVASTAR FINANCIAL, INC. and | ) | |
| NOVASTAR MORTGAGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants NovaStar Financial, Inc., and NovaStar Mortgage, Inc., respectfully request that the Court enter an order dismissing with prejudice plaintiff's claims under 42 U.S.C. § 3604 from the Complaint. That provision does not apply to discrimination in the availability of mortgage financing. A Memorandum of Points and Authorities in support and a Proposed Order accompany this Motion to Dismiss. Pursuant to Local Civil Rule 7(f), oral argument is requested.

Dated:   Washington, DC
         May 30, 2007

Respectfully submitted,

WEINER BRODSKY SIDMAN KIDER PC

By:   /s/ Mitchel H. Kider_____
      Mitchel H. Kider (Bar No. 358531)
      David M. Souders (Bar No. 441491)
      Brian P. Perryman (Bar No. 491034)
      1300 19th Street, NW, Fifth Floor
      Washington, DC 20036-1609
      Telephone: (202) 628-2000
      Facsimile: (202) 628-2011
      Email: kider@wbsk.com
      Email: souders@wbsk.com
      Email: perryman@wbsk.com

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL COMMUNITY REINVESTMENT COALITION, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )     Civil Action No. 07-861 (RCL) ) |
| NOVASTAR FINANCIAL, INC. and NOVASTAR MORTGAGE, INC., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Mitchel H. Kider (Bar No. 358531)
David M. Souders (Bar No. 441491)
Brian P. Perryman (Bar No. 491034)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036-1609
Telephone: (202) 628-2000
Facsimile: (202) 628-2011
Email: kider@wbsk.com
Email: souders@wbsk.com
Email: perryman@wbsk.com

Counsel for Defendants
NovaStar Financial, Inc. and
NovaStar Mortgage, Inc.

Dated:    Washington, DC
          May 30, 2007

# <u>TABLE OF CONTENTS</u>

Introduction..................................................................................................................... 1

Background ...................................................................................................................... 1

Legal Standard For Motion To Dismiss.......................................................................... 4

Argument ......................................................................................................................... 4

     I.      42 U.S.C. § 3605, And Not § 3604, Governs The Availability
           Of Mortgage Financing Under The Federal Fair Housing Act............................. 4

     II.     Caselaw Supports A Limited Reading Of 42 U.S.C. § 3604 ................................ 11

Conclusion ..................................................................................................................... 15

## TABLE OF AUTHORITIES

### CASES

*A Quaker Action Group v. Morton*,
  516 F.2d 717 (D.C. Cir. 1975) ........................................................................ 14

*Bates v. United States*,
  522 U.S. 23 (1997) ........................................................................................ 7

*Board of Governors, Federal Reserve System v. Dimension Finance Corp.*,
  474 U.S. 361 (1986) ...................................................................................... 8

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ........................................................................ 4

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ................................................................................. 9, 12

*Clifton Terrace Associates, Ltd. v. United Technologies Corp.*,
  929 F.2d 714 (D.C. Cir. 1990) ...................................................................... 13

*D. Ginsberg & Sons v. Popkin*,
  285 U.S. 204 (1932) ...................................................................................... 7

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ........................................................................................ 6

*Duncan v. Walker*,
  533 U.S. 167 (2001) .................................................................................. 6, 7

*El-Hadad v. United Arab Emirates*,
  216 F.3d 29 (D.C. Cir. 2000) ........................................................................ 14

*Fourco Glass Co. v. Transmirra Products Corp.*,
  353 U.S. 222 (1957) ...................................................................................... 7

*Gaona v. Town & Country Credit*,
  324 F.3d 1050 (8th Cir. 2003) ...................................................................... 11

*Gersman v. Group Health Association*,
  975 F.2d 886 (D.C. Cir. 1992) ...................................................................... 14

*HCSC-Laundry v. United States*,
  450 U.S. 1 (1981) ...................................................................................... 7, 8

*In re Executive Office of the President*,
  215 F.3d 20 (D.C. Cir. 2000) ........................................................ 14

*Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.*,
  456 F. Supp. 831 (D. Del. 1978) .................................................... 2

*Kowal v. MCI Communications Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ....................................................... 4

*Laufman v. Oakley Building & Loan Co.*,
  408 F. Supp. 489 (S.D. Ohio 1976) ......................................... 6, 11

*Mackey v. Lanier Collection Agency & Service, Inc.*,
  486 U.S. 825 (1988) ...................................................................... 6

*\*Mackey v. Nationwide Insurance Cos.*,
  724 F.2d 419 (4th Cir. 1984) .................................................. 8, 12

*Merrion v. Jicarilla Apache Tribe*,
  455 U.S. 130 (1982) ...................................................................... 3

*Montana v. United States*,
  450 U.S. 544 (1981) ...................................................................... 3

*NAACP v. American Family Mutual Insurance Co.*,
  978 F.2d 287 (7th Cir. 1992) ....................................................... 12

*National Coalition to Save Our Mall v. Norton*,
  161 F. Supp. 2d 14 (D.D.C. 2001) ............................................... 14

*National Fair Housing Alliance, Inc. v. Prudential Insurance Co. of America*,
  208 F. Supp. 2d 46 (D.D.C. 2002) ............................................... 12

*Nationwide Mutual Insurance Co. v. Cisneros*,
  52 F.3d 1351 (6th Cir. 1995) ....................................................... 12

*Otis Elevator Co. v. Secretary of Labor*,
  921 F.2d 1285 (D.C. Cir. 1990) ................................................. 6, 9

*Russello v. United States*,
  464 U.S. 16 (1983) ........................................................................ 7

*\*Simms v. First Gibraltar Bank*,
  83 F.3d 1546 (5th Cir. 1996) ................................................. 11, 12

*Stewart v. Smith*,
   673 F.2d 485 (D.C. Cir. 1982) ...................................................................... 7

*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
   200 F.3d 843 (D.C. Cir. 2000) ...................................................................... 2

*United States v. Torres*,
   115 F.3d 1033 (D.C. Cir. 1997) .................................................................. 14

*Williams v. Taylor*,
   529 U.S. 420 (2000) ...................................................................................... 6

*\*Webster Bank v. Oakley*,
   265 Conn. 539, 830 A.2d 139 (2003) .................................................. 9, 10, 13

## STATUTES AND REGULATIONS

42 U.S.C. § 3604 ............................................................................................ *passim*

42 U.S.C. § 3605 ............................................................................................ *passim*

42 U.S.C. § 3608 .................................................................................................. 16

42 U.S.C. § 3614a ................................................................................................ 16

24 C.F.R. pt. 100 ............................................................................................ *passim*

## INTRODUCTION

Plaintiff's Complaint alleges that NovaStar Mortgage, Inc. ("NMI") and NovaStar

Financial, Inc. ("NFI") – a national mortgage lender and its parent company, respectively –

maintain policies of not making mortgage loans secured by:  (1) properties located on Indian

reservations; (2) properties used as adult foster care facilities; and (3) rowhouses located in

Baltimore, Maryland.  The Complaint contends that these lending policies violate 42 U.S.C. §§

3604 and 3605 of the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*

Plaintiff's causes of action under § 3604, however, are subject to dismissal for failure to

state a cognizable claim.  That provision deals with discrimination in the sale and rental of

residential housing.  By contrast, § 3605 deals specifically with discrimination in the availability

of financing.  Consequently, the plain language and design of these two provisions compel the

conclusion that § 3605 is the only vehicle for discrimination claims involving the *financing* of

residential housing.  Although this reading has not yet been directly addressed by the Court of

Appeals for this Circuit, decisions from the Courts of Appeal for the Fourth, Fifth and Eighth

Circuits support a finding that § 3604 does not govern discrimination in the making or

purchasing of mortgage loans.  This Court should reach the same conclusion and, accordingly,

should dismiss plaintiff's claims under § 3604.

## BACKGROUND

For purposes of this Motion, NMI and NFI must accept the well-pleaded allegations of

plaintiff's Complaint as true.

In this case, plaintiff – a non-profit organization, Complaint ("Compl.") ¶ 9 – alleges

violations of the FHA.  In particular, plaintiff asserts that NMI and NFI – a national mortgage

lender and its parent holding company, respectively,[1] *id.* ¶¶ 10, 11 – maintain three corporate

policies that each violate 42 U.S.C. § 3604(a), (b), (c) and (f) and 42 U.S.C. § 3605(a). *Id.* ¶ 37.

The first policy challenged is an alleged prohibition on making mortgage loans secured

by dwellings on Indian reservations. *Id.* ¶ 14. Plaintiff contends not only that this policy is

facially discriminatory, *id.*, but also that it has a disproportionate impact on Native Americans.

*Id.* ¶ 15. The second policy is an alleged prohibition on making mortgage loans secured by

dwellings used for adult foster care. *Id.* ¶ 18. Plaintiff similarly contends that this second policy

is facially discriminatory, *id.*, and has a disproportionate impact on people with disabilities. *Id.*

Lastly, plaintiff alleges that NMI and NFI maintain a policy of denying mortgage loans to

applicants with a rowhouse in Baltimore, Maryland. *Id.* ¶ 24. Plaintiff contends that the "no-

rowhouse" policy is facially discriminatory, *id.*, and has a disproportionate impact on African

Americans and Latinos in Baltimore. *Id.* Plaintiff further alleges that, as a result of these

policies, it has spent resources to counteract the supposed discrimination. *Id.* ¶ 31. It seeks

injunctive relief and damages in connection with this action. *Id.* ¶ 1.

Plaintiff contends that none of these policies have a business justification. *Id.* ¶¶ 17, 20,

27. Although this allegation will be rebutted at later stages of the litigation, there are significant

---

[1] NFI is not a proper party to this lawsuit. At the appropriate time, defendants will demonstrate that, contrary to plaintiff's allegation, Compl. ¶ 10, NFI does not provide "underwriting guidelines for its loans" and, in fact, does not originate, service or securitize loans. NFI's subsidiaries, including NMI, perform those actions. NFI is simply a corporate parent. Likewise, plaintiff's agency theory, *id.* ¶ 12, lacks a basis in fact. Ordinarily, a parent corporation will not be held liable for the actions of its subsidiary. *See, e.g.*, *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000) ("At a minimum, however, we can confidently state that the relationship of principal and agent does not obtain unless the parent has manifested its desire for the subsidiary to act upon the parent's behalf, the subsidiary has consented so to act, the parent has the right to exercise control over the subsidiary with respect to matters entrusted to the subsidiary, and the parent exercises its control in a manner more direct than by voting a majority of the stock in the subsidiary or making appointments to the subsidiary's Board of Directors."); *accord Japan Petrol. Co. (Nigeria) v. Ashland Oil, Inc.*, 456 F. Supp. 831 (D. Del. 1978).

business expenses and risks inherent in, and unique to, loans to Indian reservation properties,[2] adult foster care facilities,[3] and rowhouses in Baltimore.[4]  Therefore, at the appropriate time, defendants will demonstrate legitimate, non-discriminatory reasons for all of its lending practices and policies.

---

[2]  Lending on Indian reservation property is, quite literally, like lending in a foreign nation. Lenders must recognize tribal sovereignty because the Supreme Court has held that tribes have authority to license and regulate non-Indians engaging in commercial transactions with the tribe or its members.  *See, e.g.*, *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 144 (1982); *Montana v. United States*, 450 U.S. 544, 565 (1981).  Some examples of the unique expenses and risks associated with lending on Indian reservation property include:  the fact that most Indian land is held in trust by federal or state governments and cannot be encumbered by a mortgage lien; the inability to foreclose on mortgages on individual Indian trust land in state courts; the limited market from which lenders can obtain data for the purposes of determining property values; the general absence of codified tribal commercial laws and resulting uncertainty of foreclosure remedies; the existence of cumbersome federal lending programs and regulations; the delays caused by the Bureau of Indian Affair's supervision of loan approvals and issuance of title status reports; the highly fractionated ownership of reservation land; the uncertainty generated by changes in tribal government leadership; the remoteness of many reservations to lenders' offices; and a lack of infrastructure, making communications with loan applicants and borrowers difficult.  Although some government-sponsored programs, such as Fannie Mae's Native American Conventional Lending Initiative, are designed to reduce some of these impediments, they certainly do not eliminate them, and the programs themselves impose additional expenses and risks for the privilege of participating in them.

[3]  Adult foster care facilities have either a commercial use or a mix of commercial and residential uses.  Regardless, NMI's policy – as explained in the program manual attached as Exhibit A to the Complaint – is to not make loans on *any* properties with either a commercial use or a mix of commercial and residential uses.  The specific policy against making loans secured by adult foster care facilities is simply an extension of this more general policy.  There are significant differences between lending on residential properties and commercial properties.  NMI's business model focuses on single-family residential properties.

[4]  It is somewhat surprising that plaintiff is seeking an injunction in connection with the Baltimore rowhouse policy.  NMI has been willing to make loans on rowhouses in Baltimore prior to January 2005 and since August 2006.  In any event, prior to August 2006, there were legitimate, non-discriminatory reasons for not making loans secured by Baltimore rowhouses, including the well-publicized abnormally high incidence of mortgage fraud (*e.g.*, inflation of a property's appraised value) in connection with rowhouse loans for the past several years.

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the Complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). While the Complaint is construed in the plaintiff's favor, and the plaintiff must be granted the benefit of all inferences that can be derived from the facts alleged, *id.*; *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), the Court need not accept inferences drawn by the plaintiff if such inferences are unsupported by the facts set out in the Complaint. *Browning*, 292 F.3d at 242; *Kowal*, 16 F.3d at 1276. Nor must the Court accept as true legal conclusions cast in the form of factual allegations. *Browning*, 292 F.3d at 242; *Kowal*, 16 F.3d at 1276.

## ARGUMENT

As set forth below, plaintiff's claims under § 3604 of the FHA should be dismissed from the Complaint with prejudice.

## I.    42 U.S.C. § 3605, AND NOT § 3604, GOVERNS THE AVAILABILITY OF MORTGAGE FINANCING UNDER THE FEDERAL FAIR HOUSING ACT

Plaintiff alleges that the refusal by NMI and NFI to provide mortgage financing in connection with various categories of properties violates both 24 U.S.C. §§ 3604 *and* 3605. Those provisions state, in relevant part:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful –

(a)    To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b)    To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c)      To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

(d)      To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

(e)      For profit, to induce or attempt to induce any person to sell or rent any dwelling by representations regarding the entry or prospective entry into the neighborhood of a person or persons of a particular race, color, religion, sex, handicap, familial status, or national origin.

(f)      (1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of – (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter.

(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of – (A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that person.

§ 3604(a)-(f)(2).

(a)      It shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin.

(b)      As used in this section, the term "residential real estate-related transaction" means any of the following:

(1) The making or purchasing of loans or providing other financial assistance – (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate.

(2) The selling, brokering, or appraising of residential real property.

§ 3605(a)-(b).

Even a passing read of these two provisions suggests that § 3604 deals with discrimination in the sale or rental of housing, while § 3605 specifically deals with discrimination in the making or purchase of loans.  Nonetheless, some courts have held, and plaintiff is apt to argue, that the language "otherwise make unavailable" in § 3604(a) and (f) is sufficiently broad enough to make those subsections applicable to the mortgage financing arena.  *See, e.g., Laufman v. Oakley Bld'g & Loan Co.*, 408 F. Supp. 489, 493 (S.D. Ohio 1976).  The notion is that the denial of a loan or other financial assistance in connection with a sale of a residence would thereby ***effectively*** make the housing unavailable, and so it is circuitously reasoned that the phrase "otherwise make unavailable" sweeps into § 3604's scope nearly everything that might have an effect on the availability of housing.  Although, at first blush, this conclusion might be linguistically appealing, in light of the specific language of § 3605, such a broad reading of § 3604 is textually unsound.

This Court's task "is to construe what Congress has enacted."  *Duncan v. Walker*, 533 U.S. 167, 172 (2001).  The Court must begin with the FHA's plain language.  *Id.* ("We begin, as always, with the language of the statute."); *Williams v. Taylor*, 529 U.S. 420, 431 (2000).  In construing that Act, the Court must give effect, if possible, to every clause and word; that is the cardinal principle of statutory construction.  *Duncan*, 533 U.S. at 174; *Otis Elevator Co. v. Sec'y of Labor*, 921 F.2d 1285, 1289 (D.C. Cir. 1990) (stating that it is a "fundamental canon" that a statute should be construed so that effect is given to all its provisions).  Accordingly, the Court should avoid adopting "an interpretation of a congressional enactment which renders superfluous another portion of that same law."  *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988); *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 35 (2003) ("A statutory interpretation that renders another statute superfluous is of course to be

avoided."); *Duncan*, 533 U.S. at 174 (declining to adopt a construction of a statute that would render a term superfluous).

"When one statute speaks in general terms while the other is specific, conflicting provisions may be reconciled by carving out an exception from the more general enactment for the more specific statute." *Stewart v. Smith*, 673 F.2d 485, 492 (D.C. Cir. 1982). "But even when the literal terms of statutory provisions would allow the specific language to be controlled by the more general, we cannot ignore evidence that Congress intended to address a specific situation through special legislation." *Id.*; *see also HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (noting that "it is a basic principle of statutory construction that a specific statute . . . controls over a general provision") (omission added); *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957) ("'However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment. Specific terms prevail over the general in the same or another statute which otherwise might be controlling.'") (quoting *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932)). This is particularly so "when the two [provisions] are interrelated and closely positioned." *HCSC-Laundry*, 450 U.S. at 6 (alteration added). Likewise, "'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Duncan*, 533 U.S. at 173 (quoting *Bates v. United States*, 522 U.S. 23, 29-30 (1997)); *Russello v. United States*, 464 U.S. 16, 23 (1983).

An application of these principles reveals that, even if the literal terms of § 3604 would allow the specific language of § 3605 to be controlled by the more general phrase "otherwise make unavailable," it is obvious that Congress intended to address a specific concern

(discrimination in lending) through the more specific § 3605.  In other words, the text of § 3605

unmistakably evinces the intent of Congress to prohibit discrimination in the context of mortgage

lending, and is the sole vehicle for the consideration of such discrimination claims.  "If [§ 3604]

was designed to reach every discriminatory act that might conceivably affect the availability of

housing, [§ 3605's] specific prohibition of discrimination in the provision of financing would

have been superfluous."  *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423 (4th Cir. 1984).  It

is no argument that § 3604 should be construed broadly simply because that provision has broad

purposes.  "The 'plain purpose' of legislation . . . is determined in the first instance with

reference to the plain language of the statute itself.  Application of 'broad purposes' of

legislation at the expense of specific provisions ignores the complexity of the problems Congress

is called upon to address and the dynamics of legislative action."  *Bd. of Governors, Fed.

Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 373-74 (1986).

      An illustration of the aforementioned canon that the "specific governs the general" is

*HCSC-Laundry v. United States*, 450 U.S. 1 (1981).  In that case, a cooperative laundry formed

by a group of hospitals challenged a ruling of the Internal Revenue Service.  The service denied

the laundry not-for-profit status under the general provisions regarding not-for-profit

organizations of § 501 (the well-known § 501(c)(3)) of the Internal Revenue Code, because a

more specific provision under § 501 governed the not-for-profit status of hospitals (the less well-

known § 501(e)), and the laundry did not fit within that more specific provision.  450 U.S. at 4.

In holding that the laundry could not claim not-for-profit status under the general provision, it

was significant to the *HCSC-Laundry* court that both provisions were "parts of 501 relating to

exemption of organizations from tax."  *Id.* at 6.

Here, by analogy, both §§ 3604 and 3605 are parts of the FHA, which generally prohibits discrimination in the sale and rental of housing and in residential real estate-related transactions. The rationale of the "specific governs the general" canon counsels that this Court treat § 3605 as Congress' specific definition of what the FHA requires in the context of lending.  Moreover, although applying § 3604 would not necessarily undermine prohibitions created by § 3605, it would render § 3605 superfluous.  Put another way, if § 3604 settled the question, there would have been no need for Congress to enact § 3605.

Moreover, the regulations issued by the Secretary of Housing and Urban Development ("HUD") to effectuate the FHA further demonstrate that allegedly discriminatory lending practices are outside the scope of § 3604.[5]  Under the rule of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the Court must uphold an agency's reasonable construction of a statute it is entrusted to administer, even if it would have imposed a different construction in the first instance.  *Otis Elevator*, 921 F.2d at 1288.  Here, "[t]he organizational scheme of the regulations promulgated pursuant to the FHA[] indicates that the secretary did not contemplate mortgage related matters arising under 42 U.S.C. § 3604." *Webster Bank v. Oakley*, 265 Conn. 539, 561, 830 A.2d 139, 153-54 (2003).

Part 100 of title 24 of the Code of Federal Regulations "provides the Department's interpretation of the coverage of the Fair Housing Act regarding discrimination related to the sale or rental of dwellings, the provision of services in connection therewith, and the availability of residential real estate-related transactions."  24 C.F.R. § 100.5(b).  Part 100 is divided into subparts A through F.  Subpart B, 24 C.F.R. §§ 100.50-90, "provides the Department's interpretation of conduct that is unlawful housing discrimination ***under [§ 3604] and [§ 3606]*** of

---

[5] The "authority and responsibility" for administering the FHA resides with HUD.  42 U.S.C. § 3608(a).  Congress authorized HUD to make rules "to carry out" the FHA.  § 3614a.

the Fair Housing Act." § 100.50(a) (alterations and emphasis added).  Subpart B addresses the

following areas of housing discrimination:  "[u]nlawful refusal to sell or rent or to negotiate for

the sale or rental," § 100.60; "[d]iscrimination in terms, conditions and privileges and in services

and facilities," § 100.65; "[o]ther prohibited sale and rental conduct," § 100.70; "[d]iscriminatory

advertisements, statements and notices," § 100.75, "[d]iscriminatory representations on the

availability of dwellings," § 100.80; "[b]lockbusting," §100.85; and "[d]iscrimination in the

provision of brokerage services," § 100.90.  Notably, "loans and their enforcement are not

mentioned anywhere within the comprehensive array of detailed regulations that comprise

subpart B." *Webster Bank*, 265 Conn. at 562, 830 A.2d at 154.  Likewise, subpart D of part 100,

entitled "Prohibition Against Discrimination Because of Handicap," also does not purport to

govern, or even mention, lending.  *See* §§ 100.200-205.

      In stark contrast to subparts B and D, subpart C, 24 C.F.R. §§ 100.110-148, "contains

ample references to loans and mortgages."  265 Conn. at 562, 830 A.2d at 154.  Subpart C

"provides the Department's interpretation of the conduct that is unlawful housing discrimination

***under [§ 3605]*** of the Fair Housing Act." § 100.110(a) (alterations and emphasis added).  That

subpart, entitled "Discrimination in Residential Real-Estate Related Transactions," addresses:

"[d]iscriminatory practices in residential real estate-related transactions," § 100.110;

"[r]esidential real estate-related transactions," § 100.115; "[d]iscrimination in the making of

loans and in the provision of other financial assistance," § 100.120; "[d]iscrimination in the

purchasing of loans," § 100.125; "[d]iscrimination in the terms and conditions for making

available loans or other financial assistance," § 100.130; and "[u]nlawful practices in the selling,

brokering, or appraising of residential real property," § 100.135.  Thus, HUD's regulatory

treatment, in accordance with the Act's plain language, further supports the conclusion that

mortgage related matters under the FHA are governed by § 3605, not § 3604.

## II.     CASELAW SUPPORTS A LIMITED READING OF 42 U.S.C. § 3604

Ample caselaw – including opinions from the Fourth, Fifth and Eighth Circuit Courts of

Appeal – support this statutory and regulatory construction.[6]

In *Gaona v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003), the Eighth Circuit

held that § 3604's implementing regulations bar discrimination in sales and rentals, not in

lending.  324 F.3d at 1056 n.7.  In that case, two deaf borrowers sued a residential mortgage

lender and an assignee of their mortgage loan.  The borrowers asserted that the lender was

obligated under the FHA to provide them with a sign language interpreter at their loan closing.

They sued under both 42 U.S.C. § 3605 and 24 C.F.R. § 100.204, which makes it unlawful for

"any person to refuse to make reasonable accommodations in rules, policies, practices, or

services, when such accommodations may be necessary to afford a handicapped person equal

opportunity to use and enjoy a dwelling unit."  The *Gaona* court found that § 100.204 "does not

apply to 42 U.S.C. § 3605, but rather to 42 U.S.C. § 3604(f)(2), which bars discrimination in

sales and rentals, rather than loans."  324 F.3d at 1056 n.7.

Similarly, in *Simms v. First Gibraltar Bank*, 83 F.3d 1546 (5th Cir. 1996), the Fifth

Circuit held that the plaintiff borrower did not present sufficient evidence to establish a violation

by the defendant lender under either §§ 3604 or 3605.  The lender had also argued – in addition

to the insufficiency of the borrower's evidence – that because the complaint "concerned only the

availability of financing under § 3605, and not the availability of housing under § 3604(b), §

---

[6] *But see Laufman*, 408 F. Supp. at 493 (stating that "a denial of financial assistance in connection with a sale of a home would effectively 'make unavailable or deny' a 'dwelling'" in violation of § 3604).

3605 is the only relevant provision."  83 F.3d at 1554 n.27.  In dicta, the *Simms* court opined that § 3604 would be inapplicable to the borrower's claims, because "the plain language of the two provisions seems to indicate that § 3605 is the vehicle for discrimination claims involving the financing of residential housing."  *Id.*

The Fourth Circuit, too, in an analogous case, held that the FHA's prohibition on discrimination does not extend to the sale of homeowners insurance.  *Mackey*, 724 F.2d 419. The *Mackey* court suggested that reading § 3604 to encompass the provision of homeowners insurance would render superfluous the more narrow prohibition of discrimination in financial transactions set forth at § 3605.[7]  In particular, the Fourth Circuit stated:  "If [§ 3604] was designed to reach every discriminatory act that might conceivably affect the availability of housing, [§ 3605's] specific prohibition of discrimination in the provision of financing would have been superfluous."  *Id.* at 423.

---

[7] *Mackey* was either distinguished or rejected in *Nationwide Mutual Insurance Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995), *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287 (7th Cir. 1992), and *National Fair Housing Alliance, Inc. v. Prudential Insurance Co. of America*, 208 F. Supp. 2d 46 (D.D.C. 2002).  Those cases, however, each dealt with discrimination in the provision of homeowners insurance, not financing.  In 1989 – after *Mackey* but before these opinions – HUD issued regulations that specifically interpreted § 3604 of the FHA to prohibit discrimination in the provision of homeowners insurance.  *See* 24 C.F.R. § 100.70(d)(4) (making it unlawful to refuse "to provide municipal services or property or hazard insurance for dwellings or providing such services or insurance differently because of race, color, religion, sex, handicap, familial status, or national origin.").  Citing the familiar *Chevron* rule, each of the courts distinguishing *Mackey* deferred to HUD's regulation.  *See, e.g.*, *Nat'l Fair Hous. Alliance*, 208 F. Supp. 2d at 55-57.  These cases differ from the case *sub judice* because HUD has never issued a regulation governing lending that derives from § 3604.  To the contrary, as stated above, each of HUD's regulations governing lending (subpart C of 24 C.F.R. pt. 100) explicitly derive from § 3605.  *See* § 100.110(a) ("This subpart provides the Department's interpretation of the conduct that is unlawful housing discrimination under [§ 3605] of the Fair Housing Act.").  To the extent *Chevron* deference applies in this case, the Court should defer to HUD's determination that § 3605, not § 3604, governs discrimination in lending. Moreover, the cases distinguishing *Mackey* are themselves distinguishable from this case because while the statutory text of the FHA ***does not*** specifically mention insurance, it ***does*** specifically mention lending.  Accordingly, the canon that the "specific governs the general" that guides this lending case simply would not apply in the insurance context.

The Supreme Court of Connecticut has also held that prohibitions on discrimination in lending arise under FHA § 3605, not § 3604. *Webster Bank*, 265 Conn. at 552-65, 830 A.2d at 148-56. In *Webster*, a lender filed a foreclosure action and the handicapped borrower asserted special defenses, including that the lender was required to provide her reasonable accommodations for her psychiatric disabilities. 265 Conn. at 544, 830 A.2d at 143-44. Looking to the plain language of the statute and the organizational scheme of HUD's regulations, the Connecticut court determined that the "reasonable accommodations" requirements in § 3604 of the FHA apply to the sale and rental of housing, and only § 3605 applies to mortgage related matters. 265 Conn. at 552-65, 830 A.2d at 148-56. The court stated "that the specific applicability of § 3605 to the context of enforcement of mortgage loan agreements precludes the application of § 3604 in the same arena." 265 Conn. at 558, 830 A.2d at 152. The *Webster* court then concluded that § 3605 does not contain a "reasonable accommodations" requirement, and a foreclosing lender need not revise its mortgage terms and conditions in order to accommodate a borrower's disability. 265 Conn. at 563-65, 830 A.2d at 155-56.

While the general consensus of courts is that § 3605 affords the only vehicle for lending discrimination claims under the FHA, the Court should nonetheless be aware of certain language in *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714 (D.C. Cir. 1990), in which the Court of Appeals for this Circuit held that a landlord could not sue an elevator manufacturer under the FHA for refusing to provide repair service to the landlord's premises. 929 F.2d at 719. The court noted that § 3604 reaches only discrimination that adversely affects the availability of housing, and that a lack of elevator service is a matter of habitability, not availability, and does not fall within the terms of § 3604. The *Clifton Terrace* court then stated: "Although the denial of certain essential services relating to a dwelling, such as mortgage

financing, sewer hookups, zoning approval, or basic utilities might result in the denial of housing, this interpretation by HUD does not extend the reach of [§ 3604] to questions of habitability." *Id.* at 719-20.

The reference to "mortgage financing" in *Clifton Terrace* is manifestly dicta. Whether § 3604 reaches discrimination in lending was not an issue before the court in that case. Indeed, the above-quoted language is the only reference to financing in the entire opinion. Moreover, the *Clifton Terrace* court offered no discussion about the implications raised by the existence of § 3605. The quoted language was simply a comment made during the course of delivering a judicial opinion that was unnecessary to the decision in the case; in other words, it was obiter dicta. *See* Black's Law Dictionary 1100 (7th ed. 1990) (defining "obiter dictum"). Binding circuit law comes only from the holdings of the Court of Appeals, not from its dicta. *See, e.g.*, *El-Hadad v. United Arab Emirates*, 216 F.3d 29, 32-33 (D.C. Cir. 2000) (declining to be bound by prior dicta); *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) (same); *Gersman v. Group Health Ass'n*, 975 F.2d 886, 897 (D.C. Cir. 1992) (same); *Nat'l Coalition to Save Our Mall v. Norton*, 161 F. Supp. 2d 14, 24 (D.D.C. 2001) (same). *Cf. In re Exec. Office of the President*, 215 F.3d 20, 24 (D.C. Cir. 2000) ("'Too frequently our dicta cause future strains rather than avoid them.'") (quoting *A Quaker Action Group v. Morton*, 516 F.2d 717, 745 (D.C. Cir. 1975) (MacKinnon, J., concurring in part and dissenting in part)). Moreover, not only is the *Clifton Terrace* language dicta, it is precatory dicta at that. The court there said that the denial of "mortgage financing . . . *might* result in the denial of housing," *id.* at 719-20, hardly a definitive opinion either way.

In short, the plain language of FHA §§ 3604 and 3605 indicates that the latter, and not the former, provision governs discrimination in mortgage lending. This conclusion accords with

the established principle of statutory construction that the "specific governs the general."  It also

accords with HUD's regulatory interpretation of the FHA, and with the majority consensus of the

state and federal courts, which have either held or opined that § 3605 is the sole vehicle for

discrimination claims involving financing.  And, of course, this Court is not required to follow

obiter dicta that does not even definitively opine to the contrary.

## **CONCLUSION**

Accordingly, for all the foregoing reasons, the Court should hold that 42 U.S.C. § 3604

does not apply to discrimination in the availability of financing, and plaintiff's claims under that

FHA provision should be dismissed with prejudice from the Complaint.

Dated:  Washington, DC                          Respectfully submitted,
        May 30, 2007
                                                  WEINER BRODSKY SIDMAN KIDER PC

                                        By:  /s/ Mitchel H. Kider_____
                                              Mitchel H. Kider (Bar No. 358531)
                                              David M. Souders (Bar No. 441491)
                                              Brian P. Perryman (Bar No. 491034)
                                            1300 19th Street, NW, Fifth Floor
                                            Washington, DC 20036-1609
                                            Telephone: (202) 628-2000
                                            Facsimile: (202) 628-2011
                                            Email: kider@wbsk.com
                                            Email: souders@wbsk.com
                                            Email: perryman@wbsk.com

F:\98054\054\lbpp1695mot MTD.doc

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of May, 2007, a copy of the foregoing Defendant's

Motion to Dismiss, the Memorandum of Points and Authorities in Support of Defendant's

Motion to Dismiss and the Proposed Order to Defendant's Motion to Dismiss was served via

electronic notification upon the following:

> John Peter Relman
> Bradley H. Blower
> Elena Grigera
> RELMAN & DANE, PLLC
> 1225 19th Street, N.W.
> Suite 600
> Washington, DC 20036-2456
> Phone: (202) 728-1888
> Fax: (202) 728-0848
> jrelman@relmanlaw.com
> bblower@relmanlaw.com
> egrigera@relmanlaw.com


                                  /s/ David M. Souders
                                          Mitchel H. Kider (Bar No. 358531)
                                          David M. Souders (Bar No. 441491)
                                          Brian P. Perryman (Bar No. 491034)
                                          1300 19th Street, NW, Fifth Floor
                                          Washington, DC 20036-1609
                                          Telephone: (202) 628-2000
                                          Facsimile: (202) 628-2011
                                          Email: kider@wbsk.com
                                          Email: souders@wbsk.com
                                          Email: perryman@wbsk.com

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| _____ | ) |  |
| NATIONAL COMMUNITY | ) |  |
| REINVESTMENT COALITION, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 07-861 (RCL) |
|  | ) |  |
| NOVASTAR FINANCIAL, INC., and | ) |  |
| NOVASTAR MORTGAGE, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

## <u>ORDER</u>

Upon consideration of the defendants' Motion to Dismiss the Complaint, Memorandum of Points and Authorities in support thereof, the opposition thereto, the reply, the facts, the law and the record herein, it is ORDERED that the defendants' Motion to Dismiss the Complaint is hereby GRANTED and, accordingly, plaintiff's claims under 42 U.S.C. § 3604 are hereby DISMISSED WITH PREJUDICE in their entirety.

SO ORDERED.


Dated: _____                    _____
                                         The Honorable Royce C. Lamberth
                                         United States District Court Judge

The Clerk shall serve a copy of this order on:

Mitchel H. Kider
David M. Souders
Brian P. Perryman
1300 19th Street, NW, Fifth Floor
Washington, DC 20036-1609
Phone: (202) 628-2000
Fax: (202) 628-2011
kider@wbsk.com
souders@wbsk.com
perryman@wbsk.com

*Counsel for Defendant, NovaStar Financial, Inc. and NovaStar Mortgage, Inc.*


John Peter Relman
Bradley H. Blower
Elena Grigera
RELMAN & DANE, PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036-2456
Phone: (202) 728-1888
Fax: (202) 728-0848
jrelman@relmanlaw.com
bblower@relmanlaw.com
egrigera@relmanlaw.com

*Counsel for Plaintiff, National Community Reinvestment Coalition*