## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**NATIONAL COMMUNITY**                    )
**REINVESTMENT COALITION**,               )
                                          )
                        Plaintiff,        )
                                          )
            v.                            )        Case No. 1:07-cv-00861 (RCL)
                                          )
**NOVASTAR FINANCIAL, INC**.,             )
                                          )
and                                       )
                                          )
**NOVASTAR MORTGAGE, INC**.,              )
                                          )
                        Defendants.       )
_____)

### PLAINTIFF NATIONAL COMMUNITY REINVESTMENT COALITION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

The National Community Reinvestment Coalition ("NCRC") brings this action under the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.*, as amended ("FHA" or "Act"), against one of the nation's largest subprime lenders, NovaStar Mortgage, Inc., and its parent company, NovaStar Financial, Inc. (collectively, "NovaStar"). *See* Compl. ¶¶ 1, 10-11. NCRC seeks relief from NovaStar's refusal to make loans secured by homes on Indian reservations, homes used for adult foster care, and row houses in Baltimore City. *See, e.g., id.* ¶¶ 3-4. NovaStar's policies discriminate against Native Americans, African Americans, Latinos, persons with disabilities, and persons associated with members of these protected groups. *See id.* ¶¶ 3-8, 18. These policies violate fair housing laws because they intentionally discriminate and have an unnecessary and unjustified disproportionate adverse impact. For reasons that will be fully

discussed at a later time, the excuses for these discriminatory policies alluded to by defendants in their motion are entirely meritless.[1]

Specifically, NCRC alleges in its Complaint that NovaStar's policies, practices, and acts violate 42 U.S.C. §§ 3604(a), (b), (c), (f)(1), (f)(2), and 3605 of the Fair Housing Act. *See id.* ¶ 37. NovaStar admits that section 3605 applies to NCRC's allegations, but moves for dismissal of NCRC's section 3604 claims. *See* NovaStar Br. at 1. NovaStar asserts that section 3605 of the Fair Housing Act "is the only vehicle for discrimination claims involving the *financing* of residential housing," that section 3604 applies exclusively to "discrimination in the sale and rental of residential housing," and that NCRC therefore has not stated a cognizable claim under section 3604. *Id.* (emphasis in original).

NCRC respectfully submits that NovaStar's construction of the Fair Housing Act is entirely wrong and that its motion to dismiss should be denied in its entirety. NovaStar fails to properly consider the expansive language of the Act or the Supreme Court's directive to give it a "generous construction" to effectuate Congress' broad goal of eradicating all forms of discrimination related to housing. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 212 (1972). To the contrary, NovaStar's view of the Act is exceedingly narrow.

---

[1]    NovaStar compresses several irrelevant claims into lengthy footnotes at the very beginning of its brief – that NFI is not a proper party because it has no agency relationship with NMI, that its discriminatory policies are justified by business considerations, and that it has resumed offering loans secured by row houses in Baltimore. *See* Mem. of P. & A. In Supp. of Defs.' Mot. to Dismiss (May 30, 2007) ("NovaStar Br.") at 2-3 & nn.1-4. NCRC need not respond to these claims because NovaStar does not offer them as bases for its motion. NovaStar makes this clear by stating that it will pursue these issues "at later stages of the litigation" or "at the appropriate time," *id.*, and by not relying on them in the Argument portion of its brief. Moreover, NovaStar's statements are directly contradicted by the allegations of the Complaint, which must be treated as true for purposes of a motion to dismiss. *See, e.g.*, Compl. ¶¶ 4, 5, 12, 17, 20, 27; *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

The language of section 3604 is as far reaching as Congress' goal suggests and unambiguously applies to lending. Section 3604 covers discrimination in:

> selling, renting, and any activity that "otherwise make[s] unavailable or den[ies]" a dwelling;

> "the provision of services or facilities in connection" with the sale or rental of a dwelling; and

> "any notice, statement, or advertisement[] with respect to the sale or rental of a dwelling."

42 U.S.C. § 3604(a), (b), (c), (f)(1), (f)(2).

Clear precedent from the courts of this Circuit establishes that this language applies to lending. In *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714, 719-20 (D.C. Cir. 1991), the D.C. Circuit described "mortgage financing" as an "essential service" within the coverage of section 3604. In *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000), this Court held that section 3604 applies to reverse redlining in lending.[2] Courts throughout the country widely agree. *See, e.g.*, *Laufman v. Oakley Building & Loan Co.*, 408 F. Supp. 489 (S.D. Ohio 1976). Courts also widely agree that section 3604 applies to a range of other services like insurance that are no more essential to housing. *See, e.g.*, *Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America*, 208 F. Supp. 2d 46, 56 (D.D.C. 2002) (section 3604 applies to redlining in insurance); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 6 (D.D.C. 1999) (same). These cases refute NovaStar's fundamental point that section 3604 applies only to the selling and renting of housing, but NovaStar ignores or minimizes them. NovaStar's motion thus asks the Court to adopt a position clearly in conflict with the holdings and logic of the D.C. Circuit, this Court, and many other courts.

---

[2]    "Redlining is the practice of denying the extension of credit to specific geographic areas due to the income, race, or ethnicity of its residents." *Hargraves*, 140 F. Supp. 2d at 20 (internal quotation marks and citations omitted). "Reverse redlining is the practice of extending credit on unfair terms to those same communities." *Id.* (internal quotation marks and citation omitted).

Moreover, through its regulations and otherwise, the Department of Housing and Urban Development ("HUD") has long interpreted section 3604 to apply to lending. HUD's regulations make plain that section 3604 applies to all persons who "engage in *any conduct* relating to the provision of housing or of services . . . in connection therewith." 24 C.F.R. § 100.70(b) (emphasis added); *see* 24 C.F.R. § 100.50(b)(3) (reaching those who "engage in any conduct relating to the provision of housing"). HUD has affirmatively stated that section 3604 and these regulations apply to lending. *See, e.g.*, 53 Fed. Reg. 44992, 44997 (Nov. 7, 1988). Even if the Court finds that section 3604 is ambiguous as to lending, it must uphold HUD's reasonable construction of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-45 (1984); *Meyer v. Holley*, 537 U.S. 280, 287-88 (2003) (applying *Chevron* deference to HUD's Fair Housing Act regulations). NovaStar's contention that HUD does not believe that section 3604 applies to lending reflects its failure to consider the actual language of HUD's regulations, just as it fails to consider the actual language of the Act itself.

Because discrimination in lending is cognizable under 42 U.S.C. § 3604(a), (b), (c), (f)(1), and (f)(2), NovaStar's motion to dismiss should be denied in its entirety.

## THE ALLEGATIONS OF THE COMPLAINT

The National Community Reinvestment Coalition is a national non-profit organization with the mission and purpose of increasing fair and equal access to credit, capital, and banking services and products for all Americans, regardless of race, national origin, or disability. *See* Compl. ¶ 2. Its members include community development corporations, civil rights groups, community reinvestment advocates, local and state government agencies, and churches. *See id.* ¶ 9. One of NCRC's primary missions is to increase the flow of private capital into underserved communities. *See id.* ¶¶ 2, 9.

4

Defendant NovaStar Financial, Inc. ("NFI") is a real estate investment fund that, through its subsidiaries, originates primarily single-family loans throughout the United States. *See id.* ¶ 10. It provides the underwriting guidelines for these loans. *See id.* Defendant NovaStar Mortgage, Inc. ("NMI") is a wholly-owned subsidiary of NFI and NFI's largest loan origination unit. *See id.* ¶ 11. NMI is the sixteenth largest residential subprime lender in the country. *See id.* The defendants act as each other's agent. *See id.* ¶ 12.

NFI and NMI (collectively, "NovaStar") maintain three classic redlining policies that are at issue here. These policies discriminate against Native Americans, African Americans, Latinos, persons with disabilities, and persons associated with members of these protected groups. *See, e.g.*, *id.* ¶¶ 3-8, 18.

First, NovaStar refuses to makes loans that are secured by homes on Indian reservations throughout the country. *See, e.g.*, *id.* ¶¶ 3, 14. This policy is published in NovaStar's Program Manual. *See id.* ¶ 3. Over forty percent of Native American homeowners live on Indian reservations, while the percentage of white homeowners is less than two percent. *See id.* ¶ 15.

Second, NovaStar refuses to make loans that are secured by homes used for adult foster care. *See, e.g.*, *id.* ¶¶ 3, 18. This policy is also published in the Program Manual. *See id.* ¶ 3. Adult foster care homes are dwellings in residential neighborhoods that serve the need of adults with mental, sensory, and physical impairments in a less restrictive setting than other types of care, such as nursing homes. *See id.* ¶ 18.

Third, NovaStar refuses to make loans secured by row houses in Baltimore City. *See, e.g.*, *id.* ¶ 4, 24. Nearly two-thirds of all row houses in Baltimore City are occupied by African Americans, and the policy similarly discriminates against Latino residents of Baltimore City.

*See id.* ¶¶ 23, 24.  NovaStar has revealed the existence of this policy explicitly in response to inquiries from NCRC testers about loans.  *See id.* ¶¶ 25-26.

NovaStar's policies explicitly treat loan applicants differently based on characteristics that are protected by the Fair Housing Act, and disproportionately and adversely impact Native Americans, African Americans, Latinos, persons with disabilities, and persons associated with members of these protected groups.  *See, e.g.*, ¶¶ 3, 24.  The policies deny members of these groups access to homeownership and credit, and do so without regard to traditional lending criteria such as credit scores and income.  *See, e.g.*, *id.* ¶ 5, 8.  There is no business justification for these policies.  *See id.* ¶¶ 5, 17, 20, 27.  Simply by employing traditional lending criteria, NovaStar would significantly reduce the adverse impact on protected groups without increasing the company's risk exposure.  *See id.* ¶¶ 6, 17, 20.

NCRC alleges that NovaStar's acts, policies and practices violate the federal Fair Housing Act.  Specifically, NCRC alleges violations of 42 U.S.C. sections 3604(a), (b), (c), (f)(1), (f)(2), and 3605.  *See id.* ¶ 37.

## STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts "must treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal quotation marks and citations omitted).  "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (internal quotation marks and citation omitted).  Dismissal is inappropriate

unless this is "'beyond doubt.'"  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040

(D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## ARGUMENT

### I.    THE FAIR HOUSING ACT MUST BE GIVEN A "GENEROUS CONSTRUCTION" TO FURTHER CONGRESS' BROAD PURPOSE

Congress' goal in enacting the Fair Housing Act was bold and broad:  "It is the policy of

the United States to provide, within constitutional limitations, for fair housing throughout the

United States."  42 U.S.C. § 3601.  In an oft-quoted passage, the Eighth Circuit explained that

the Act "prohibit[s] all forms of discrimination," and this Court has noted that it aims at no less

than the "eradication of discrimination in . . . housing."  *Williams v. Matthews Co.*, 499 F.2d 819,

826 (8th Cir. 1974); *Brown v. Artery Org., Inc.*, 654 F. Supp. 1106, 1119 (D.D.C. 1987).  The

expansion of housing choices for all Americans was crucial to the Act's supporters.  Senator

Mondale, the principal sponsor of the Act, *see Thompson v. HUD*, 348 F. Supp. 398, 456 n.115

(D. Md. 2005), stated that "the basic purpose of [fair housing] legislation is to permit people who

have the ability to do so to buy any house offered to the public if they can afford to buy it."  114

Cong. Rec. 3421 (Feb. 20, 1968).  Congress reaffirmed its commitment to "a clear national

policy against discrimination in housing" in 1988 by expanding the Fair Housing Act's reach and

enforcement mechanisms.  H.R. Rep. No. 100-711, at 15 (1988), *as reprinted in* 1988

U.S.C.C.A.N. 2173, 2176; *see* Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 102

Stat. 1619 (1988) ("1988 FHA Amendments").

In the pursuit of fair housing, Congress crafted an expansive statute aimed at a broad

range of discriminatory practices affecting the housing market.  *See, e.g.*, *Mayers v. Ridley*, 465

F.2d 630, 652 (D.C. Cir. 1972) (*en banc*) ("Congress was aware that the measure would have a

very broad reach, and indeed the legislation was seen as an attempt to alter the whole character

of the housing market.") (Wilkey, McGowan, & Leventhal, JJ., concurring). In addition to prohibiting particular practices, Congress included throughout the Act exceptionally far reaching language. Some of that language is at issue here. In 42 U.S.C. § 3604(a), for example, instead of barring only the discriminatory refusal to "sell or rent" or "negotiate for the sale or rental of" a home, the Act also bars all other activities that "otherwise make unavailable or deny" a home. The purpose of this language is to ensure that the Act eradicates housing discrimination in its entirety, regardless of what form it takes.

Likewise, and in stark contrast to Title VII's approach to employment discrimination, Congress placed no limits on the types of defendants that may be sued under the Fair Housing Act. *Compare Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973) (Title VII prohibitions apply only to employers, labor organizations, and employment agencies) *with* 42 U.S.C. §§ 3601-3631 (Fair Housing Act applies to all categories of potential defendants); *see Mayers*, 465 F.2d at 651 & n.21 (emphasizing that the Act's prohibition against discriminatory statements extends to "*anyone*") (Wilkey, McGowan, & Leventhal, JJ., concurring). The Act has thus supported claims against, *inter alia*, governments and government officials, real estate agents, brokers, lenders, insurers, newspapers, apartment owners, and appraisers, and for actions as diverse as, *inter alia*, steering, zoning, harassment, publishing advertisements, and firebombing.[3]

---

[3]    *See, e.g., Samaritan Inns, Inc. v. District of Columbia*, 114 F.3d 1227 (D.C. Cir. 1997) (District of Columbia and city officials); *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979) (broker); *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) (lender); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1 (D.D.C. 1999) (insurer); *Ragin v. New York Times Co.*, 923 F.2d 995 (2d Cir. 1991) (newspaper; publishing advertisements); *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (apartment owner); *Hanson v. Veterans Admin.*, 800 F.2d 1381 (5th Cir. 1986) (appraiser); *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135 (6th Cir. 1985) (real estate agents; steering); *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2d Cir. 1987) (zoning); *Williams v. Poretsky Mgm't, Inc.*, 955 F. Supp. 490 (D. Md. 1996) (harassment); *Byrd v. Brandeburg*, 922 F. Supp. 60 (N.D. Ohio 1996) (firebombing).

The Supreme Court's Fair Housing Act decisions are explicitly animated by the broad purpose and language of the Act. The Court has instructed that the Act must be given a "generous construction" in light of its "broad and inclusive" language. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212 (1972). In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982), for example, the Court rejected a defendant's restrictive interpretation of the Act largely because it would "undermine[] the broad remedial intent of Congress embodied in the Act." *Cf. Diatta v. District of Columbia*, 319 F. Supp. 2d 57, 65 (D.D.C. 2004) (Lamberth, J.) (rejecting defendants' construction of the Individuals with Disabilities Education Act that would undermine the "broad . . . rights granted by the Act"). Likewise, the Court ruled in *City of Edmonds* that exceptions to the Fair Housing Act must be read narrowly "to preserve the primary operation" of the overarching policy stated in 42 U.S.C. § 3601. 514 U.S. at 731-32 (internal quotation marks and citation omitted). Consistent with this approach, the Court has repeatedly held that standing is to be applied broadly under the Act, extending as far as the limits of Article III permit. *See Havens Realty Corp.*, 455 U.S. at 372; *Gladstone, Realtors*, 441 U.S. at 1612, 1615; *Trafficante*, 409 U.S. at 209, 212.

The Supreme Court's insistence that the Act be afforded a generous interpretation is specifically relevant here, where NovaStar asks the Court to restrict the reach of arguably the Act's most important provision, 42 U.S.C. § 3604, in disregard of its plain terms.

## II.     THE PLAIN AND UNAMBIGUOUS LANGUAGE OF 42 U.S.C § 3604 APPLIES TO NOVASTAR'S DISCRIMINATORY LENDING POLICIES

It is well-established that construing a statute begins with "determin[ing] whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The statute's "context," which

includes its purpose, is properly considered in determining its "plainness or ambiguity." *Id.* at 341; *see United States v. Wilson*, 290 F.3d 347, 359 (D.C. Cir. 2002) (discussing Congress' aim in reauthorizing the United States Commission on Civil Rights in case involving "a pure legal question of statutory interpretation").

NovaStar nonetheless offers virtually no analysis of the particular words Congress chose to use in 42 U.S.C. § 3604(a), (b), (c), (f)(1), and (f)(2). Nor does NovaStar address the purpose of the Fair Housing Act. The reason for these omissions is apparent – both clearly show that NovaStar's view of the statute is wrong. The statute's words demonstrate that section 3604 does, in fact, plainly and unambiguously apply to NovaStar's discriminatory lending policies. Homes are "unavailable or den[ied]" to people because of NovaStar's policies, 42 U.S.C. § 3604(a), (f)(1); mortgage lending is a "service" provided "in connection with" the sale of homes, *id.* § 3604(b), (f)(2); and notices and statements about lending policies are made "with respect to the sale . . . of a dwelling," *id.* § 3604(c). Likewise, NovaStar's cramped reading of section 3604 is antithetical to the purpose of the Act because it would preclude the section's application to a crucial component of buying a house – borrowing the money to pay for it. This reading is precisely the opposite of the "generous construction" mandated by the Supreme Court and the intent of the statute articulated by Congress in 42 U.S.C. § 3601.

This conclusion is reinforced by the conclusion of other courts that section 3604 applies to lending and other activities that are essential to real estate transactions. This includes the D.C. Circuit's description of "mortgage financing" as an "essential service[] related to a dwelling," the denial of which "might result in the denial of housing." *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714, 719-20 (D.C. Cir. 1991) ("*Clifton Terrace*"). These cases refute NovaStar's contention that section 3604 applies only to the actual sale or rental of a

dwelling, and not to the many other activities that are related to, or necessary for, homeownership. *See* NovaStar Br. at 1.

### A.        The Language of Section 3604 is Broad

Section 804 of the Fair Housing Act, codified at 42 U.S.C. § 3604, makes it unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, <u>or otherwise make unavailable or deny</u>, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, <u>or in the provision of services or facilities in connection therewith</u>, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, <u>with respect to</u> the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

42 U.S.C. § 3604 (emphases added).  Subsections (f)(1) and (f)(2) apply to discrimination based on handicap language that parallels the emphasized language of subsections (a) and (b).  *See id.* These provisions manifest Congress' intent of specifying particular practices that are unlawful while simultaneously assuring that the Act is "flexible enough to cover multiple types of housing-related transactions."  *Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America*, 208 F. Supp. 2d 46, 56 (D.D.C. 2002) (Sullivan, J.) ("*Prudential*").

Beginning with subsections (a) and (f)(1), NovaStar's policy of refusing to lend to whole categories of would-be borrowers makes housing "unavailable" to those borrowers and "den[ies]" them dwellings.  The reason is simple.  Purchasing a home almost always requires a loan.  In many cases, so does maintaining a home or improving it to meet a family's changing needs.  As one court succinctly put it, and was quoted with approval by this Court in construing

11

subsection (f)(1), "'[w]ithout mortgage financing, homes cannot be purchased.'" *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 6 (D.D.C. 1999) (Kennedy, J.) (quoting *McDiarmid v. Economy Fire & Cas. Co.*, 604 F. Supp. 105, 107 (S.D. Ohio 1984)). Nowhere does NovaStar dispute this. Instead, it simply ignores the considerably broad phrase, "or otherwise make unavailable or deny," and asserts that section 3604 reaches only "discrimination in the sale and rental" of dwellings. *See* NovaStar Br. at 1. But ignoring Congress' words is, of course, impermissible. *See, e.g.*, *Western Union Tel. Co. v. FCC*, 729 F.2d 811, 817 (D.C. Cir. 1984).

The plain language of subsections (b) and (f)(2) likewise applies because mortgage lending constitutes "services" provided "in connection with" the "sale . . . of a dwelling." Indeed, the D.C. Circuit described "mortgage financing" as an "essential service[] related to a dwelling." *Clifton Terrace*, 929 F.2d at 719. The identification of mortgage lending as a "service" is so strong that, as a simple Westlaw search demonstrates, countless lenders use the phrase "mortgage services" in their names.[4] Likewise, the term "financial services" is used in everyday parlance to describe what lenders provide. *See, e.g.*, *Cornwall v. Electra Cent. Credit Union*, 439 F.3d 1018, 1022 (9th Cir. 2006); *Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 648 (8th Cir. 2001). This usage is even reflected in the structure of Congress – one of the leading issues under consideration by the House Committee on *Financial Services* is mortgage lending. *See* http://financialservices.house.gov/initiatives.html (last visited June 4, 2007) (addressing "Predatory and Subprime Mortgage Issues") (emphasis added). Because "financial services" encompasses the services engaged in by NovaStar, lending is clearly covered by the term "services" as used in subsections (b) and (f)(2). NovaStar, nonetheless, fails to address the meaning of "services" or its presence in the statute, just as it

---

[4]    Counsel used the search term "mortgage services" in Westlaw's ALLFEDS library.

does with subsection (a) and (f)(1)'s "otherwise makes unavailable or deny" clause.  This failure is telling.

Subsection (c) also unambiguously applies to NovaStar's lending business.  Notably, Congress used the words "*with respect to* the sale or rental" in subsection (c), even though it used the words "*for* the sale or rental" in subsection (a).  42 U.S.C. § 3604(a), (c) (emphases added).  Use of the narrow word "for" to modify "the sale of rental" in subsection (c) would have been meaningful and coherent, but Congress chose instead to use "with respect to."  As the D.C. Circuit has observed, "with respect to" is an "extremely general" phrase.  *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1136 (D.C. Cir. 2001).  This choice of words must be given effect: "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Rusello v. United States*, 464 U.S. 16, 23 (1983) (internal quotation marks and citation omitted); *see id.* ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each."); *Havens Realty Corp.*, 455 U.S. at 374 (recognizing and giving effect to different choices of words in 42 U.S.C. § 3604(a) and (d)).  At the very least, NovaStar's purchase mortgage loans are made "with respect to" home sales because the sale of a home is the very purpose of such loans.

### B.    Ample Precedent Demonstrates That Section 3604 Applies to Discriminatory Lending

The D.C. Circuit, this Court, and other courts that have considered the issue have concluded that section 3604 applies to lending.  The D.C. Circuit discussed the issue in *Clifton Terrace*.  Although the precise holding in the case was that an elevator manufacturer's refusal to service an elevator in an apartment building did not give rise to a Fair Housing Act claim by the owner, the court reached that conclusion in part by explaining what activities section 3604 does

13

reach. *See Clifton Terrace*, 929 F.2d at 718-20. It stated that "the denial of certain essential services relating to a dwelling, such as mortgage financing . . . might result in the denial of housing . . . ." *Id.* at 719-20. *Clifton Terrace* thus demonstrates that subsections (a) and (b) both apply to lending because its denial can make housing unavailable and it is a "service."

NovaStar makes a considerable effort to convince the Court that *Clifton Terrace*'s analysis is dicta that should be both ignored and rejected, *see* NovaStar Br. at 13-14, but the analysis is closely tied to the holding because it illuminates the line drawing upon which the holding is based. That is, the D.C. Circuit determined what is not covered by the section 3604, *i.e.*, elevator servicing, by contrasting it to what is covered, *i.e.*, mortgage financing. Even if the D.C. Circuit's statements about lending in the context of section 3604 technically are dicta, however, the Circuit's lower courts are required to give them "serious consideration." *Gabbs Exploration Co. v. Udall*, 315 F.2d 37, 39 (D.C. Cir. 1963) ("That, indeed, is the general rule in federal courts."). This Court, in fact, expressly relied on *Clifton Terrace*'s explication of the contours of subsection (b) in holding that parallel subsection (f)(2) covers the discriminatory denial of insurance. *See Wai*, 75 F. Supp. 2d at 7-8.

This Court confirmed that section 3604 applies to lending more recently in *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000). *Hargraves* involved allegations of reverse redlining in loans secured by real property. *See id.* at 19. Judge Green held that section 3604(a) applied because the "predatory practices alleged can make housing unavailable by putting borrowers at risk of losing the property which secures their loans."[5] *Id.* at 20; *see also Associates Home Equity Servs., Inc. v. Troup*, 778 A.2d 529, 537 (N.J. Super. Ct. App. Div. 2001) (relying on *Hargraves*). The court specifically noted that, compared to some other civil

---

[5]     The Court did not reach the issue of whether section 3604(b) applies to a particular subset of lending activity. *See id.* at 22.

rights statutes, the Fair Housing Act "is typically given broad construction."  *Id.* at 21 n.7.

*Hargraves* strongly supports the application of section 3604 here because NovaStar's redlining

policies are more closely linked to the availability and sale of homes than reverse redlining.  The

refusal to provide mortgage services always makes housing unavailable and always respects the

sale of a home, while predatory lending only creates the risk of losing a property.[6]

Likewise, in *Laufman v. Oakley Building & Loan Co.*, 408 F. Supp. 489 (S.D. Ohio

1976), the court held that section 3604(a) applies to the discriminatory denial of loans.  Rejecting

the same argument that NovaStar principally relies on here, *Laufman* holds that "the same

conduct may be prohibited by either or both [sections 3604 and 3605]."  *Id.* at 493.  It then states:

> The cost of housing being what it is today, a denial of financial assistance in
> connection with a sale of a home would effectively 'make unavailable or deny' a
> 'dwelling.'  When such denial occurs as a result of racial considerations, §
> 3604(a) is transgressed.

HUD subsequently relied on *Laufman*'s analysis of section 3604(a) and adopted it as HUD's

own position.  *See infra* at § III.  Similarly, in *United States v. Hughes*, 849 F. Supp. 685 (D.

Neb. 1994), the court held that the United States stated a claim under section 3604(a) by alleging

that a bank provided a purchase loan with the goal of helping to prevent a social services

organization from turning the house into a group home for mentally ill adults.

Courts have likewise held that section 3604(b) applies to lending.  In *Beard v. Worldwide

Mortgage Corp.*, 354 F. Supp. 2d 789, 808-09 (W.D. Tenn. 2005), the court recognized that

section 3604(b)'s phrase "or in the provision of services or facilities in connection therewith"

must be construed broadly and held that it "is broad enough to encompass home improvement

loans and refinancing loans because the burden of the debt affects individuals['] ability to buy or

---

[6]    Indeed, *Munoz v. International Home Capital Corp.*, No. C-03-01099-RS, 2004 WL 3086907, at *4-5
(N.D. Cal. May 4, 2004) (Seeborg, Mag.), expressly rested its holding that section 3604 applies to predatory lending
on the holding of *Laufman v. Oakley Building & Loan Co.*, 408 F. Supp. 489 (S.D. Ohio 1976), that section 3604
applies to the discriminatory denial of loans.  *Laufman* is discussed immediately below.

sell a dwelling." The court explained that defendants involved with the mortgage at issue "are alleged to have provided *services* in connection with" the loan. *Id.* at 809 (emphasis added). In *Honorable v. Easy Life Real Estate System*, 100 F. Supp. 2d 885 (N.D. Ill. 2000), the court similarly held that discriminatory lending claims – both redlining and reverse redlining – are cognizable under section 3604(b). *See id.* at 892 ("[t]hese sorts of practices come within the ambit of the Fair Housing Act;" the only FHA claim was under section 3604(b)).

In light of this substantial body of case law, granting NovaStar's motion would require the Court to hold, for the first time in this Circuit and contrary to the clear consensus of courts throughout the country, that 42 U.S.C. § 3604 applies only to the actual selling and renting of homes. The Court would have to reject the D.C. Circuit's understanding of lending as a "service," this Court's holding in *Hargraves* that housing is made unavailable or denied by reverse redlining, and the consistent analyses of many other courts. There is no reason for the Court to do so.

### C.    Section 3604 Applies To A Range Of Other Services That Are Similarly Essential To Real Estate Transactions

Many courts, among them the D.C. Circuit and this Court, have also held that diverse activities as essential to housing as lending are covered by 42 U.S.C. § 3604, even though the section does not specifically enumerate them.

In *Mayers v. Ridley*, 465 F.2d 630 (D.C. Cir. 1972) (*en banc*), the *en banc* court reversed a panel's holding that section 3604(c) did not bar the District of Columbia's Recorder of Deeds from accepting for filing deeds containing racial covenants. A majority of the court[7] reasoned that section 3604(c) applied because the function of the Recorder's office was central to real estate transactions. *See id.* at 634 ("It blinks reality to suggest that the official functions of the

---

[7]    The court issued a short per curiam opinion stating only the fact of reversal, two concurrences signed by three judges each, and two dissenting opinions.

Recorder are unrelated to the transfer and sale of real estate."); *id.* ("[w]e can take judicial notice of the fact that a visit to the Recorder's office is an ingredient in virtually every real estate transaction in this city"); *id.* at 649 ("Two indispensable ingredients of any real estate transaction are a visit to the Recorder's office to check the title before the sale, and a visit to the Recorder's office to file the deed for record after the sale.").  Because the function of lenders is just as central, section 3604(c) also applies to NovaStar's discriminatory statements.

This Court has twice held that subsections (a) and (b) or their equivalents, subsections (f)(1) and (f)(2), apply to discrimination in the provision of insurance.  *See Prudential*, 208 F. Supp. 2d at 55-57; *Wai*, 75 F. Supp. 2d at 5-8.  Both cases reasoned that insurance is a practical necessity when a person buys a home.  *See Prudential*, 208 F. Supp. 2d at 57 ("homeowners insurance [is] a prerequisite to home ownership for most people in the country"); *Wai* 75 F. Supp. 2d at 6 (quoting cases with approval).  Indeed, *Wai* quoted with approval two cases[8] holding that insurance is covered because housing is rendered unavailable without a mortgage, and a mortgage is unavailable without insurance.  *See* 75 F. Supp. 2d at 6.  Adopting NovaStar's position that mortgages themselves are not covered by section 3604 would contradict these decisions' persuasive reasoning.  Moreover, *Prudential* also explicitly describes insurance as a "service" within the meaning of section 3604(b).  *See* 208 F. Supp. 2d at 57 ("it is not unreasonable to conclude that Congress' prohibition of services related to the sale or rental of a dwelling extends to the provision of homeowners insurance").  Other courts have, for the same reasons, agreed with this Court that subsections (a) and (b) apply to insurance.  *See, e.g.*, *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1360 (6th Cir. 1995) ("the availability of property insurance has a direct and immediate affect on a person's ability to obtain housing");

---

[8]    *United States v. Massachusetts Indus. Fin. Agency*, 910 F. Supp. 21, 27 (D. Mass. 1996), and *McDiarmid v. Economy Fire & Cas. Co.*, 604 F. Supp. 105, 107 (S.D. Ohio 1984).

*NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 299 (7th Cir. 1992) (citing with approval *Clifton Terrace*'s understanding of "services" in subsection (b)). These cases demonstrate that lenders are covered by section 3604(a) because a loan is every bit as essential to homeowners as insurance, and by section 3604(b) because they apply the term "services" to those who provide financial services in support of housing.

Courts have also held that the related service of providing appraisals is covered by section 3604(a) and (b). *See Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986) ("Discriminatory appraisal may effectively prevent blacks from purchasing or selling a home for its fair market value."); *Steptoe v. Savings of America*, 800 F. Supp. 1542, 1545-47 (N.D. Ohio 1992) ("An appraisal sufficient to support a loan request is a necessary condition precedent to a lending institution making a home loan."); *United States v. American Institute of Real Estate Appraisers*, 442 F. Supp. 1072, 1079 (N.D. Ill 1977) (claim stated where appraisal standards cause "appraisers and lenders to treat race and national origin as a negative factor in determining the value of dwellings and in evaluating the soundness of home loans"). In light of NovaStar's assertion that sections 3604 and 3605 may not be applied to the same conduct, it is particularly significant that *Steptoe* was decided after section 3605 was amended in 1988 to reference appraisals specifically. *See* 1988 FHA Amendments at § 6(c).

Finally, many decisions in other contexts refute NovaStar's claim that section 3604 applies only to actual sales and rentals of dwellings, narrowly construed. *See, e.g.*, *United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2d Cir. 1987) (application to municipality's zoning decisions); *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977) (same); *Williams v. Poretsky Mgm't, Inc.*, 955 F. Supp. 490 (D. Md. 1996) (application to sexual harassment of tenant by apartment building employee); *Byrd v.*

*Brandeburg*, 922 F. Supp. 60 (N.D. Ohio 1996) (application to throwing of Molotov cocktail onto porch of home owned by African Americans).

*    *    *

The Fair Housing Act's plain language, congressional intent, and substantial precedent thus demonstrate that 42 U.S.C. § 3604 unambiguously applies to lending. When a statutory provision plainly applies to the facts of a case, the only remaining question is whether "the statutory scheme is coherent and consistent." *Robinson*, 519 U.S. at 340 (internal quotation marks and citation omitted). Where it is, the "inquiry must cease." *See id.* In this case, even NovaStar admits that application of section 3604 to lending creates no incoherency or inconsistency in the Fair Housing Act's overall statutory scheme. *See* NovaStar Br. at 9 ("applying § 3604 would not necessarily undermine prohibitions created by § 3605"). NovaStar's motion to dismiss therefore should be denied based on the plain language of the Fair Housing Act.

## III.    THE DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, CHARGED WITH IMPLEMENTING THE FAIR HOUSING ACT, AGREES THAT SECTION 3604 APPLIES TO LENDING

Even if the Court were to find that the Fair Housing Act is ambiguous as to lending, NovaStar's motion must nevertheless still be denied in deference to HUD's clear and controlling interpretation. HUD has primary responsibility for implementing and administering the Act, and the Court therefore must uphold HUD's construction of the Act so long as it is "reasonable." *See, e.g.*, *Gladstone, Realtors*, 441 U.S. at 107 (HUD has primary responsibility); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-45 (1984) (deference to reasonable agency construction); *Meyer v. Holley*, 537 U.S. 280, 287-88 (2003) (applying *Chevron* deference to HUD's Fair Housing Act regulations).

HUD has determined that section 3604 does, in fact, apply to lending. This determination is reflected in HUD's regulations, in HUD's own explanation of its regulations, and in a memorandum from the Department's General Counsel to its Assistant Secretary for Equal Opportunity. NovaStar's contention that HUD does not believe section 3604 applies to lending is based on a simplistic reading of the headings in HUD's regulations instead of their actual words. *See* NovaStar Br. at 9-11.

First, HUD's Fair Housing Act regulations clearly show that section 3604 applies to lending. In 24 C.F.R. § 100.50(b)(1) and (3), explicitly promulgated under section 3604, HUD divides section 3604(a) into two parts. The first, section 100.50(b)(1), addresses subsection (a)'s clauses that focus on the selling and renting of housing. The second part addresses the "otherwise make unavailable or deny" clause and reflects HUD's determination that this phrase applies to all manner of housing-related activities:

> It shall be unlawful to: . . . (3) *Engage in any conduct relating to the provision of housing* which otherwise makes unavailable or denies dwellings to persons because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. § 100.50(b) (emphasis added). HUD uses the same broad language to indicate the breadth of the discriminatory "services" that are prohibited by section 3604(b):

> It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, *to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith* that otherwise makes unavailable or denies dwellings to persons.

24 C.F.R. § 100.70(b) (emphasis added).

These regulations cannot be read to exclude discriminatory lending. Lenders undoubtedly "engage in [] conduct relating to the provision of housing," and the "services" they provide likewise relate to the provision of housing. The phrase "engage in any conduct relating

to the provision of housing" cannot plausibly be limited solely to acts of selling or renting, as NovaStar suggests.

NovaStar nonetheless asserts that HUD's regulations "support[] the conclusion that mortgage related matters under the FHA are governed by § 3605, not § 3604." NovaStar Br. at 10-11. NovaStar reasons that, because loans are not specifically mentioned in 24 C.F.R. subpart B (promulgated under section 3604) but are mentioned in subpart C (promulgated under section 3605), HUD must have decided that section 3604 does not apply to lending. *See* NovaStar Br. at 9-11. The words of the regulations, which NovaStar ignores in favor of quoting the headings of the regulations, *see* NovaStar Br. at 10, are fatal to this analysis. Subpart B introduces its examples of unlawful conduct with the phrase, "[p]rohibited actions under this section include, *but are not limited to*," demonstrating that the lack of a specific reference to lending in subpart B is irrelevant. 24 C.F.R. §§ 100.60(b), 100.65(b), 100.70(c), (d), 100.75(c), 100.80(b), 100.85(c), 100.90(b) (emphasis added). What matters is that subpart B's language plainly reaches discriminatory lending as part of the broad range of conduct that the Act and the regulations prohibit. It does so through 24 C.F.R. §§ 100.50(b)(3) and 100.70(b), as explained, as well as through four other reiterations of the broad language Congress used in section 3604. *See* 24 C.F.R. §§ 100.50(b)(2),(4), 100.65(a), 100.75(a) (using the phrases "services or facilities in connection with the sale or rental" and "with respect to the sale or rental"). In other words, subpart B reaches lending just as the Act itself does – by including language expansive and flexible enough to reach the wide range of activities and actors that might interfere with the national policy of achieving fair housing.

Second, and equally important, HUD's own explanation of its regulations is in accord with NCRC's. In fact, HUD has specifically stated that subpart B applies to lending. In 1988,

Congress directed HUD to issue regulations to implement the Fair Housing Act.  *See* 1988 FHA

Amendments at § 13.  HUD published a proposed rule on November 7, 1988.  *See* 53 Fed. Reg.

44992.  Subpart B of the proposed rule, just like the final rule, concerned conduct that violates

section 3604 and included various illustrations of such conduct.  *See id.* at 45024-27.  In its

explanation of subpart B published in the Federal Register, HUD made clear that these

illustrations did not define the extent of unlawful conduct.  It also made clear that, though not

included among the illustrations, discriminatory financing is covered by section 3604.  The

preamble to the proposed rule states:

> In view of the broad reach of the "otherwise make unavailable" language in the
> Fair Housing Act, it is especially important to note that the illustrations in this
> subpart [B] are only examples of discriminatory conduct and are not intended to
> limit the scope of discrimination in housing made unlawful under the Act.  For
> instance, although not set forth as an example in this subpart, . . . *discriminatory*
> *. . . financing practices[] ha[ve] been interpreted by the Department and by*
> *courts to render dwellings unavailable under the "otherwise make unavailable"*
> *in the Fair Housing Act.*

*Id.* at 44997 (emphasis added).

HUD adopted the proposed subpart B with only modest modifications less than three

months later.  *See* 54 Fed. Reg. 3232 (Jan. 23, 1989).  In the preamble to the final rule, HUD

again stated that its examples are no more than examples:  "the illustrations provided in the final

rule are intended to describe[] discriminatory housing practices generally and are not intended to

be exhaustive descriptions of all conduct made unlawful under the Fair Housing Act."  *Id.* at

3239-40.  HUD has not deviated from these explanations of or amended subpart B.[9]

Furthermore, HUD's view that section 3604 applies to lending was expressed even earlier

than the rulemaking that created 24 C.F.R. subpart B.  In 1978, HUD's General Counsel affirmed

---

[9]     HUD's subsequent rulemakings regarding discriminatory conduct under the Fair Housing Act, *i.e.*, 24
C.F.R. part 100, did not concern subpart B.  *See* 60 Fed. Reg. 43322 (Aug. 18, 1995); 61 Fed. Reg. 5198 (Feb. 9,
1996).

that section 3604 applies to both lending and insurance in a memorandum to the Assistant

Secretary for Equal Opportunity. *See* Mem. from Ruth T. Prokop to Chester C. McGuire (Aug.

25, 1978) (copy attached as Attach. A). The memorandum states that "any discriminatory action

which, as a practical matter, makes a dwelling 'unavailable,' is violative of Section 3604(a)."

*See id.* at 2. The General Counsel concluded that the discriminatory denial of insurance is

covered because insurance is needed to obtain financing, and the absence of financing renders

dwellings unavailable. *See id.* at 2-3. The memorandum explicitly endorses the *Laufman* court's

statement, quoted above, that "'a denial of financial assistance in connection with a sale of a

home would effectively 'make unavailable or deny' a dwelling.'" *Id.* at 2 (quoting *Laufman*, 408

F. Supp. at 493). Decisions of the Sixth and Seventh Circuit relied on the General Counsel's

memorandum and make clear that HUD has maintained the memorandum's construction of the

Act ever since it issuing it. *See Nationwide Mut. Ins. Co.*, 52 F.3d at 1354 ("HUD has adhered to

this interpretation of the Act since at least 1978"); *American Family Mut. Ins. Co.*, 978 F.2d at

300 ("since 1978 a succession of [HUD] Secretaries have believed . . .").

Accordingly, HUD has long interpreted section 3604 to apply to lending through its

regulations, explanation of its regulations, and General Counsel's memorandum. Particularly in

light of the Fair Housing Act's broad language and the Supreme Court's directive to give the law

a "generous construction," HUD's interpretation is reasonable and must be upheld. *See, e.g.*,

*Chevron U.S.A. Inc.*, 467 U.S. at 843-45; *Wai*, 75 F. Supp. 2d at 7 (24 C.F.R. § 100.70(b) is

reasonable). It does not matter that this interpretation has, in part, been articulated outside of

HUD's formal regulations. In a case that did not involve any HUD regulations, the Supreme

Court held that HUD's "consistent administrative construction of the [Fair Housing] Act" "is

entitled to great weight." *Trafficante*, 409 U.S. at 210. In addition, HUD's understanding of its

own regulations is controlling because, for all the reasons discussed, it is not "plainly erroneous or inconsistent with the regulation[s]." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Accordingly, even if section 3604 were ambiguous in the context of lending, the Court must uphold HUD's interpretation of the statute and deny NovaStar's motion to dismiss.[10]

## IV.    THE CANONS OF CONSTRUCTION RELIED ON BY NOVASTAR DO NOT APPLY HERE

As discussed above, NovaStar's brief is remarkable for its failure to offer any meaningful analysis of the actual language of 42 U.S.C. § 3604(a), (b), (c), (f)(1), and (f)(2). The closest NovaStar comes to the language is its focus on two canons of statutory construction – that one part of a statute should not be construed so as to render another part superfluous, and that a specific provision of a statute controls over a more general one. *See* NovaStar Br. at 6-9. These arguments fail because these canons do not apply here and, even if they did, canons cannot alter the plain meaning of a draftsman's words.

### A.    The Application of Section 3604 to Lending Does Not Render Section 3605 Superfluous

The canon regarding superfluousness is irrelevant because applying section 3604 to lending would not render section 3605 superfluous. These sections overlap as to some housing-related activities, but there are other activities covered by section 3605 that section 3604 does not reach. Section 3603 makes this clear. It exempts activities concerning certain dwellings from

---

[10]    It is also significant that the Department of Justice, charged with enforcing the Fair Housing Act through civil litigation, *see* 42 U.S.C. § 3614, has appeared before this Court as *amicus curiae* to express the position of the United States that section 3604 applies to lending. *See* Brief of the United States as *Amicus Curiae* In Supp. of Pls.' Opp. to Defs.' Mot. for J. on the Pleadings or, in the Alternative, for Summ. J. at 15-27, *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) (No. 98-1021).

The Department of Justice also expressed this position by bringing suit under sections 3604(a) and (b), as well as 3605, against a bank for, like NovaStar, refusing to make loans secured by real property on Indian reservations. *See United States v. Blackpipe State Bank*, No. 93-5115 (D.S.D. consent decree filed 1993) (copy attached as Attach. B).

the prohibitions of subsections 3604(a), (b), (d), (e), and (f), but not from the prohibitions of section 3605. *See* 42 U.S.C. § 3603(b).

Furthermore, Congress amended section 3605 in 1988 to make clear that the Fair Housing Act covers the sale of housing-related loans on the secondary market. *See* 1988 FHA Amendments at § 6(c) (amending 42 U.S.C. § 3605 to apply to "[t]he making *or* purchasing of loans") (emphasis added); H.R. Rep. No. 100-711, at 30 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 2173, 2191 ("Under amended Section [3605], the provisions of the Act extend to the secondary mortgage market."). Congress would not have done so if it were clear that section 3604 applied beyond the origination of loans all the way to sales on the secondary market. Similarly, while the application of section 3604 to some post-purchase loans secured by residential property is uncertain, *see Hargraves*, 140 F. Supp. 2d at 22 (noting but not resolving issue), those loans plainly are within the ambit of section 3605, *see* 42 U.S.C. § 3605(b)(1)(A). Accordingly, the construction of section 3604 advanced by NCRC does not, in fact, render section 3605 superfluous.

**B.    A Specific Statutory Provision Does Not Limit the Interpretation of a General One Where, As Here, There Is No Conflict Between Them**

Likewise, the canon that a specific statutory provision controls and limits a more general one has no application here. This canon "applies only when there is an 'inescapable conflict' between the specific provision and the general provision." *Aeron Marine Shipping Co. v. United States*, 695 F.2d 567, 576 (D.C. Cir. 1982) (citing C. Sands, *Statutes and Statutory Construction*, § 46.05 (4th ed. 1972)). Whatever the canon's "combative power against a statute's plain meaning," it applies "only in the face of 'irreconcilably conflicting statutes.'" *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994) (citations omitted). That was precisely the situation in the case that NovaStar relies on in its discussion of this canon, *HCSC-Laundry v. United States*, 450

U.S. 1 (1981) (per curiam). A specific provision of the tax code plainly denied a tax exemption to an organization, while a more general provision arguably granted it; in light of this conflict, the Court applied the canon and followed the specific provision. *See id.* at 2 n.2, 3 n.3, 8.

There is no conflict between sections 3604 and 3605, however. Indeed, NovaStar essentially acknowledges as much. *See* NovaStar Br. at 9 ("applying § 3604 would not necessarily undermine prohibitions created by § 3605"). The conclusion that both sections apply to NovaStar's discriminatory policies creates no tension and does nothing to weaken either one's ability to combat housing discrimination. Nor does it produce a conflict with any other provision of the Fair Housing Act.

Moreover, the fact that sections 3604 and 3605 overlap to some extent is entirely appropriate. NovaStar appears to believe that a statute should not be construed such that some of its provisions overlap, but that position is at odds with settled law. In *Natural Resources Defense Council v. Reilly*, 983 F.2d 259, 271-72 (D.C. Cir. 1993), the D.C. Circuit held that overlapping provisions in the Clean Air Act were not only proper, but demonstrated "congressional prudence." In *Edison Electric Institute v. United States EPA*, 2 F.3d 438, 452 (D.C. Cir. 1993) (per curiam), the D.C. Circuit upheld a statutory construction in which provisions of the Resource Conservation and Recovery Act overlapped even though it viewed an alternative construction without overlap to be both "plausible" and "elegant." Similarly, the Supreme Court held that, while "undoubtedly . . . the [Securities Act of 1933 and the Securities Exchange Act of 1934] prohibit some of the same conduct," that is "neither unusual nor unfortunate." *United States v. Naftalin*, 441 U.S. 768, 778 (1979). Discussing *Naftalin*, the D.C. Circuit observed that the two Acts "are meant to be interrelated and interdependent components of a general scheme," and that "their overlap in no way diminishes the plain meaning of [a particular] section [of the

1934 Act]." *Wachovia Bank & Trust Co., N.A. v. National Student Marketing Corp.*, 650 F.2d

342, 354 (D.C. Cir. 1980).

The propriety of overlap among statutory provisions is more than just a doctrinal

observation, though.  It is precisely what Congress intended with sections 3604 and 3605.  One

need not even look to the language "otherwise make unavailable or deny," "services," or "with

respect to" to see that this is the case.  Among other things, section 3605 prohibits discrimination

in the "selling . . . of residential real property."  42 U.S.C. § 3605(b)(2).  Through various

phrasings, so do all of the subsections of 3604 under which NCRC brings this lawsuit.  Overlap

among the sections of the Fair Housing Act plainly is not the evil that NovaStar suggests.  To the

contrary, it is the design of the statute.  This design is reflected in many decisions analyzing

sections 3604 and 3605.  *See, e.g.*, *NAACP*, 978 F.2d at 298 (rejecting the 4th Circuit's statement

in *Mackey v. Nationwide Insurance Co.*, 724 F.2d 419 (4th Cir. 1984), that sections 3604 and

3605 cannot be read to overlap); *Nationwide Mut. Ins. Co.*, 52 F.3d at 1357 (same); *Prudential*,

208 F. Supp. 2d at 56 (same; both sections apply to insurance); *Steptoe*, 800 F. Supp. at 1545-47

(denying summary judgment to defendant accused of discriminatory appraisal under sections

3604 and 3605 even though appraising is specifically enumerated in section 3605(b)(2));

*Laufman*, 408 F. Supp. at 501 (holding that sections 3604 and 3605 both apply to lending).

### C.    Canons of Construction May Not Be Used to Alter Plain Meaning

Even if there were a valid basis for considering the canons relied on by NovaStar, a court

may not invoke a canon of construction to "forc[e] from plain words unusual and unnatural

meanings."  *Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489, 492 (1932).  Yet that is precisely

what NovaStar would have this Court do.  NovaStar asks the Court to hold that it does not "

make unavailable or deny" dwellings by refusing to make loans secured by homes on Indian

reservations, adult foster care homes, or row houses, 42 U.S.C. § 3604(a), (f)(1); that lending is

not a "service," *id.* § 3604(b), (f)(2); and that statements of its discriminatory policies are not

made "with respect to" the sale of dwellings, *id.* § 3604(c). Because this would strip Congress'

words of their plain meaning, a canon of construction that would otherwise lead to this result is

inapplicable. *See Bergholm*, 284 U.S. at 492 (refusing to apply well-established canon of

construction where it would "vary the plain terms").

## V.    CONTRARY TO NOVASTAR'S CLAIM, THE "GENERAL CONSENSUS" OF COURTS IS THAT SECTION 3604 APPLIES TO LENDING

Finally, NovaStar contends that four cases from outside this Circuit demonstrate a

"general consensus of courts [] that § 3605 affords the only vehicle for lending discrimination

claims under the FHA."  NovaStar Br. at 13.  An examination of these cases demonstrates that

this statement is baseless.

Two of NovaStar's cases expressly state that they have no application to the issue of

whether section 3604 applies to lending.  In *Simms v. First Gibralter Bank*, 83 F.3d 1546 (5th

Cir. 1996), the Fifth Circuit considered whether there was sufficient evidence of lending

discrimination to support a jury verdict under sections 3604(b) and 3605.  The court held that the

evidence was not sufficient, *see id.* at 1555-56, allowing it to resolve the case without deciding if

section 3604(b) applied in the first place.  In a footnote, the court stated the issue raised by

NovaStar here, cited one case it thought pointed in each direction, and said, "[b]ecause of the

result we reach today, it is unnecessary for us to address these matters."  *Id.* at 1554 n.27.

*Mackey v. Nationwide Insurance Co.*, 724 F.2d 419 (4th Cir. 1984), similarly disclaims

relevance to the question at issue here.  *Mackey* considered the applicability of section 3604 to

redlining in the sale of hazard insurance, not lending.  *See id.* at 423-25.  The Fourth Circuit

noted that *Dunn v. Midwestern Indemnity*, 472 F. Supp. 1106 (S.D. Ohio 1979), held that section

28

3604 does apply to insurance, but criticized *Dunn*'s "heav[]y reli[ance] upon *Laufman v. Oakley Bldg. & Loan Co.,* 408 F. Supp. 489 (S.D. Ohio 1976) . . . . [where] it was held that discrimination in the financing of housing was within the broad proscription of § [3604]." *Mackey*, 724 F.2d at 424.  The Fourth Circuit believed this reliance misplaced:  "The conclusion in *Laufman* that discrimination in financing is impliedly prohibited by § [3604] lends little support to *Dunn*'s holding that discrimination in the provision of insurance is also impliedly included."  *Id.*  Because *Mackey* itself viewed the application of section 3604 to lending and insurance as unrelated issues, surely *Mackey* cannot be invoked in this lending case.

Mackey is an especially weak precedent for additional reasons.  The sole sentence NovaStar lifts from *Mackey* – "[i]f § [3604] was designed to reach every discriminatory act that might conceivably affect the availability of housing, § [3605]'s specific prohibition of discrimination in the provision of financing would have been superfluous" – is too generalized an observation to be of any use here.  *Mackey*, 724 F.2d at 423 (quoted in NovaStar's brief at pages 8 and 12).  Furthermore, the sentence's "if" clause presents an inherently flawed premise.  As explained above, *see supra* at § IV.A, section 3604 does not necessarily reach every act that a fair housing statute might, and holding that it applies to lending does not in any way render section 3605 superfluous.

Moreover, other courts have rejected virtually every aspect of *Mackey*'s reasoning.  Most importantly, Judge Sullivan of this Court and the Sixth and Seventh Circuits have rejected the notion, implicit in *Mackey* and NovaStar's brief, that sections 3604 and 3605 may not overlap.  *See NAACP*, 978 F.2d at 298; *Nationwide Mut. Ins. Co.*, 52 F.3d at 1357; *Prudential*, 208 F. Supp. 2d at 56.  As Judge Easterbrook explained:

> The [*Mackey*] court's unstated assumption is that statutes never overlap.  Section 3605 then shows that § 3604 does not cover lending, and by implication does not

cover much at all.  Yet why should we suppose that sections of a statute do not overlap?  Conveying meaning to diverse interpreters for an uncertain future is a difficult business.   A wise drafter may state a principle in one section and list some applications of that principle in another, to make pellucid what ought to be apparent but which some judges (and many lay persons) will miss unless spelled out.  Using the instance to restrict the principle would gum up the process of communication, inverting every effort to clarify.

*NAACP*, 978 F.2d at 298 (internal citation omitted).  Criticizing *Mackey*, Judge Sullivan similarly stated that "[n]othing in the structure or stated purpose of the FHA would support a conclusion that its provisions may not provide overlapping remedies."  *Prudential*, 208 F. Supp. 2d at 56.  These courts likewise rejected the Fourth Circuit's understanding of the legislative process and the insurance industry.  *See, e.g.*, *NAACP*, 978 F.2d at 298-300.  *Mackey* has thus been thoroughly discredited in all respects and should be given no weight.[11]

NovaStar's last federal case, *Gaona v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003), likewise provides scant support for its motion.  *Gaona* primarily considered whether 42 U.S.C. § 3605 and a regulation implementing it (24 C.F.R. § 100.120(b)) required a lender to provide reasonable accommodations, *i.e.*, a sign language interpreter, to a deaf couple during meetings.  *See id.* at 1052.  The court held that an interpreter was not required.  In a footnote, the court also addressed the claim that a different regulation, 24 C.F.R. § 100.204, required the relief sought.  *See id.* at 1056 n.7.  The court concluded that the regulation did not apply, first because it concerned "accommodations . . . necessary" for the "use and enjoy[ment of] a dwelling unit," and the defendant actually provided the mortgage.  *Id.*  Implicit in this rationale is an acknowledgement that the failure to provide the mortgage would have made the dwelling "unavailable" to the plaintiffs.  42 U.S.C. § 3604(a), (f)(1).  As a secondary reason, the court

---

[11]     There is, therefore, no truth to NovaStar's claim that other courts have not followed *Mackey* only because a HUD Fair Housing Act regulation later explicitly prohibited insurance redlining.  *See* NovaStar Br. at 12 n.7.  Curiously, NovaStar also seeks to distinguish cases rejecting *Mackey* on the ground that they involve insurance and not lending, even though only insurance was at issue in *Mackey*.  *See id.*

stated that the regulation applied only to section 3604(f)(2), "which bars discrimination in sales and rentals, rather than loans . . . ." *Gaona*, 324 F.3d at 1056 n.7. The court offered no analysis in support of this distinction. Nor did it make any effort to explain why subsection (f)(2) includes the phrase "or in the provision of services or facilities in connection with," if not to expand the provision's reach beyond sales and rentals. Furthermore, nothing in *Gaona* suggests that the expansive language of subsections (a), (c), and (f)(1) does not apply to lending; as noted, *Gaona* actually implies that subsections (a) and (f)(1) do apply. Even on its own terms, *Gaona* therefore provides no basis for NovaStar's assertion that subsections (a), (c), and (f)(1) do not apply to its discriminatory lending policies.

Finally, NovaStar relies on a state court opinion from Connecticut, *Webster Bank v. Oakley*, 830 A.2d 139 (Conn. 2003). That case concerns the application of section 3604 to foreclosure, which is not at issue here, not to lending itself. *See id.* at 148. This distinction is crucial to the Connecticut court and undermines NovaStar's reliance on the case. The court held that foreclosure is not covered by section 3604 only because foreclosure happens well after a person has acquired a home. *See id.* at 152 n.20. This distinction plainly supports the application of section 3604 to purchase mortgage loans, at the least.

Moreover, *Webster Bank*'s rationale for excluding foreclosure from the scope of section 3604 is deeply flawed and at odds with D.C. Circuit precedent. The court looked to the Fair Housing Act regulations and ascribed to HUD the position that only section 3605 applies to lending. Like NovaStar, however, the court considered only selected portions of the regulations and failed to appreciate that the examples of prohibited acts are just that – examples. As shown above, *see supra* at § III, HUD's actual position is that sections 3604 and 3605 both apply to lending. *Webster Bank* also rests on the court's belief, again shared by NovaStar, that "the

31

specific applicability of § 3605 to the context of enforcement of mortgage loan agreements precludes the application of § 3604 in that same arena." *Webster Bank*, 830 A.2d at 152.  But regardless of how statutes are construed in Connecticut courts, in the D.C. Circuit there is nothing wrong with the overlap of statutory provisions.  *See supra* at § IV.B.  Likewise, in this Circuit the application of a statute's general provision is not precluded by a specific provision's application absent an irreconcilable conflict between them.  *See id.*

In sum, *Simms*, *Mackey*, *Gaona*, and *Webster Bank* offer virtually no support for NovaStar's claim that section 3604 does not apply to lending.  NovaStar's assertion that these cases demonstrate a "general consensus" in support of this claim is untenable.  To the contrary, as *Clifton Terrace*, *Hargraves*, *Laufman*, and their progeny demonstrate, the clear consensus of courts that have squarely considered the matter is that section 3604 fully applies to discriminatory lending activities like those described in NCRC's Complaint.  Holding otherwise would require a novel and narrow construction of section 3604 in conflict with an extensive body of clear precedent in this Circuit and elsewhere.

**CONCLUSION**

For the reasons stated above, the National Community Reinvestment Coalition

respectfully submits that NovaStar's motion to dismiss should be denied in its entirety.


Respectfully submitted,

_/s/_ John P. Relman_____
John P. Relman (Bar No. 405500)
Bradley H. Blower (Bar No. 421112)
Elena Grigera (Bar No. 491678)
Glenn Schlactus (Bar No. 475950)
RELMAN & DANE, PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
(202) 728-1888
(202) 728-0848 (fax)
jrelman@relmanlaw.com
bblower@relmanlaw.com
egrigera@relmanlaw.com
gschlactus@relmanlaw.com

*Attorneys for Plaintiff*
*National Community Reinvestment Coalition*

Dated:  June 13, 2007

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiff National

Community Reinvestment Coalition's Memorandum of Points and Authorities in Opposition to

Defendants' Motion to Dismiss and the accompanying Proposed Order was electronically filed

on June 13, 2007 using the Court's CM/ECF system.  Notice of this filing will be sent by

operation of the Court's electronic filing system to all counsel.


/s/  Rose Ehler_____
Rose Ehler

# ATTACHMENT

# A

THE GENERAL COUNSEL OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, D.C. 20410

August 25, 1978

MEMORANDUM TO:    Chester C. McGuire
                  Assistant Secretary for
                  Equal Opportunity, E

SUBJECT:    Title VIII of the Civil Rights Act of 1968

In connection with Departmental consideration of the issuance of
substantive regulations interpreting Title VIII you have requested our
views on the applicability of the Federal Fair Housing Act to property
insurance activities.

Specifically, you asked for advice on whether a failure or refusal to
provide property insurance on dwellings based upon race, color, sex,
religion or national origin violates Title VIII.

Section 804(a) of Title VIII of the Civil Rights Act of 1968, 42 U.S.C.
Section 3604(a), makes it unlawful to refuse to negotiate for the sale
or rental of, or otherwise make unavailable or deny, a dwelling to any
person because of race, color, religion, sex or national origin.

The question whether insurance redlining is covered by Section 804(a)
has not been addressed by the courts. The provisions of the Fair
Housing Act of 1968 have, however, been construed broadly by the courts.
The Act has been described as a "detailed housing law, applicable to a
broad range of discriminatory practices," Jones v. Mayer Co., 392 U.S.
490, 417 (1968), and is to be accorded a "generous" construction so that
it can accomplish the "enormous" task which Congress contemplated for it.
Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211-212 (1972).

Further, coverage under the Fair Housing Act is not limited to those who
sell, rent, or finance real estate. "The Act has been applied not only
to persons selling or renting dwellings, but also to newspapers carrying
advertisements, to registrars of deeds containing racially restrictive
covenants, and to municipalities engaging in zoning or discriminatory
land use practices." United States v. Hughes Memorial Home, 396 F. Supp
544 (W.D. Va. 1975) (citations omitted).

"Section 804(a) not only makes it unlawful to 'refuse to sell or rent...' a dwelling for racial reasons, but also makes it unlawful to 'otherwise make unavailable or deny a dwelling to any person because of race, color, religion, [sex] or national origin.' (Emphasis in decision.) This catch-all phraseology may not be easily discounted or de-emphasized. Indeed it 'appears to be as broad as Congress could have made it, and all practices which have the effect of denying dwellings on prohibited grounds are therefore unlawful.' United States v. Youritan Constr. Co., 370 F. Supp. 643. (United States v. City of Parma, P.H.E.O.H. Reptr. para 13,616, at p. 14015 (Ohio 1973))

Indeed, Section 804(a) has been construed to prohibit conduct much broader than that constituting a refusal to sell or rent. The statutory language prescribing conduct that "otherwise make[s] [dwellings] unavailable" has been applied to a variety of discriminatory conduct distinguishable from refusals to sell or rent, including refusal to make a mortgage loan because of the race of persons living in the area where the home was located, Laufman v. Oakley Bldg. and Loan Co., supra; Harrison v. Heinzeroth, 414 F. Supp 67 (N.D. Ohio 1976); racial steering by real estate agents, Zuch v. Hussy, 366 F. Sup 553 (E.D. Mich 1976); adoption of exclusionary ordinances by a municipality, United States v. Parma, supra; and discriminatory rejection by an orphanage of minority orphans, United States v. Hughes Memorial Home, 396 F. Supp. 544 (W.D. Va. 1975).

The rationale of these decisions indicates that any discriminatory action which, as a practical matter, makes a dwelling "unavailable," is violative of Section 3604(a). This rationale was best articulated by the Laufman court in the context of lender redlining:

The cost of housing being what it is today, a denial of financial assistance in connection with a sale of a home would effectively "make unavailable or deny" a dwelling. When such denial occurs as a result of racial considerations, Section 3604(a) is transgressed. Laufman v. Oakley Building & Loan Co., 408 F. Supp. 489 (S.D. Ohio 1976).

Adequate insurance coverage is often a prerequisite to obtaining financing. Insurance redlining, by denying or impeding coverage makes mortgage money unavailable, rendering dwellings "unavailable" as effectively as the denial of financial assistance on other grounds:

insurance is essential to revitalize our cities. It is a cornerstone of credit. Without insurance, without mortgages, financial institutions will not - and cannot - make loans."

(Report by the President's National Advisory Panel on Insurance, Meeting the Insurance Crisis of Our Cities 1 (1968).)

In instances where maintenance of appropriate hazard or property insurance on the premises is required as a condition of financing for the purchase of the dwelling refusal to issue insurance policies or imposition of provisions which make it more difficult to obtain such insurance, when based on the racial, religious, sex or ethnic origin of the applicant or similar concerns about a community, which would result in the denial of the mortgage makes the dwelling "unavailable" within the meaning of Section 804(a). Since this type of insurance redlining is within the parameters of Title VIII we are also of the opinion that issuance of Title VIII regulations is appropriate.

In the McCarran-Ferguson Act, 15 U.S.C. Section 1011-1012, the Congress declared:

"that the continued regulation and taxation by the several States of the business of insurance is in the public interest and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States."

Further, the Act provides that no act of Congress "shall be construed to invalidate, impair or supersede any law enacted by any state regulating the business of insurance." (15 U.S.C. 1012(b)).

While the McCarran Act has been held to exempt the business of insurance from Federal antitrust Acts if such is regulated by the State where the alleged actions occurred, Commander Leasing Co. v. Transamerica Title Ins. Co., 447 F. 2d 77, 83 (10th Cir. 1973), the Supreme Court has indicated that "[i]nsurance companies may do many things which are subject to paramount federal regulations..." SEC v. National Securities, Inc., 393 U.S. 453 89 S. Ct., 21 L. Ed 2d 668 (1969).

It may be argued that this Congressional mandate exempts insurance activities from Federal legislation in the area of Civil Rights including the Fair Housing Act. However, although there is no legislative history under Title VIII in this area and there have been no judicial decisions we are of the opinion statutes such as Title VIII which are designed to protect constitutional rights are not limited by the McCarran-Ferguson Act.

In the only case which has addressed the McCarran-Ferguson Act was held not to bar suit against insurance companies for alleged violations of the Civil Rights Act of 1866 (42 U.S.C. Section 1982) <u>Ben v. General Motors Acceptance Corp.</u>, 374 F. Supp. 1199 (D. Colo. 1974). The Ben court stated that:

> "There is no indication in the background and history of the McCarran Act or its application that the McCarran Act was intended to deprive a citizen of access to the Federal Courts to obtain redress for violations of his civil rights and require him to resort to the state courts as the sole forum for redress. If such were the intent of Congress, it is highly questionable that Congress had the power under the Constitution to do so."

Based upon the above we are of the opinion that the McCarran-Ferguson Act does not exempt insurance companies from the coverage of the Federal Housing Act.

Ruth T. Prokop

# ATTACHMENT

# B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH DAKOTA
## WESTERN DIVISION

UNITED STATES OF AMERICA,
   Plaintiff,

v

                                                    Civil Action Number 93-5115

BLACKPIPE STATE BANK,
   Defendant.

_____

## AMENDED COMPLAINT

The United States of America alleges:

1. This action is brought by the United States to enforce the provisions of the Equal Credit Opportunity Act, as amended, 15 U.S.C. §§ 1691-1691f, and Title VIII of the of 1966 Civil Rights Act (Fair Housing Act), as amended by the Fair Housing Amendments Act Of 1988, 42 U.S.C. §§ 3601-3619.

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1345, 42 U.S.C. § 3614, and 15 U.S.C. § 1691(h)

3. Defendant, Blackpipe State Bank, is a federally insured bank doing business in the State of South Dakota. Its business includes regularly extending credit, including personal loans and agricultural and commercial loans. The Bank also extends credit for home improvement loans and loans to purchase mobile homes which are "residential real-estate related transactions" as defined in the Fair Housing Act, 42 U.S.C. § 3605(b)(1).

4. As a federally insured lending institution, Blackpipe State Bank is subject to federal laws governing fair lending, including the Equal Credit Opportunity Act, the Fair Housing Act, and the Community Reinvestment Act of 1977 (12 U.S.C. §§ 2901-2906) The Community Reinvestment Act, 12 U.S.C. § 2901 et seq., and its implementing regulations, 12 C.F.R § 354 et seq., require Defendant to meet the credit needs of the entire community in which it operates, including the credit needs of low-and moderate -income areas of the community.

5. As of December 31, 1991, Blackpipe State Bank had approximately $18 million in assets and approximately $9 million in outstanding loans. It is located in the city of Martin, in Bennett County, South Dakota, which is bordered on three sides by American Indian reservations. It is the only major lender in the county.

6. According to the 1950 Census, 46% of the 3206 residents of Bennett County are American Indian; 94% of the 9902 resident of adjacent Shannon County, which is entirely located within the Pine Ridge reservation, are American Indian; and 82% of the 8352 residents of adjacent Todd County, whose boarders are the same as those of the Rosebud reservation, are American Indian.

7. The Bank has adopted a policy of refusing to make any loans secured by collateral that may be subject to tribal court, rather than state or federal court, jurisdiction. This policy precludes all American Indians on the adjacent Indian reservations from obtaining secured loans for such items as motor vehicles or farm equipment from Blackpipe State Bank even if they satisfy all other lending criteria used by the Bank.

8. This policy also precludes all American Indians on the adjacent Indian reservations from obtaining secured loans for residential purposes, including to purchase mobile homes and/or to repair their residences, even if they satisfy all other lending criteria used by the Bank.

9. Both the Rosebud and the Pine Ridge tribal courts have collection provisions and procedures that are used by

creditors to repossess collateral or otherwise obtain remedies in the event of default on a loan that is subject to tribal jurisdiction. Blackpipe State Bank would also be able to utilize these provisions and procedures to obtain appropriate remedies if it extended secured credit subject to tribal court jurisdiction.

10. More than 18,000 American Indians live in Bennett County and the three surrounding South Dakota counties and constitute more than 75% of the total population in that area. However, based upon information provided to the United States by the Bank, as of April 12, 1993, no more than 171 (33.9%), and no fewer than 114 (22.6%), of the Bank's 504 borrowers are American Indians. The majority of the American Indian borrowers received loans of less than $1000.

11. Blackpipe State Bank has traditionally offered a variety of credit products to its customers, including agricultural, commercial, real estate and personal loans. The majority of the loans made to American Indians were personal loans, and more than four-fifths of the personal loans to American Indians were for less than $1000.

12. The Bank has required American Indian applicants for loans, including those who do not reside on the adjacent reservations, to provide collateral or meet credit requirements which would not be required of white applicants. The Bank has also rejected American Indian applicants for loans under circumstances when white applicants would have been accepted.

13. The Bank has charged American Indian recipients of unsecured personal loans higher interest rates and finance charges than similarly situated white borrowers of such loans.

14. In addition, the Bank has engaged in other practices which contribute to its lending practices and policies towards American Indians. The Bank does not have currently any American Indian employees and has had only one American Indian employee in its history the Bank has delineated its area so it excludes all of the Pine Ridge and Rosebud reservations; the Bank does not and has not marketed its loan products to residents of the Pine Ridge and Rosebud reservations; the Bank is not an approved lender of guaranteed loans from the Farmers Home Administration and the Bureau of Indian Affairs; and the Bank has a policy of refusing to make home mortgage loans due to its reluctance to make such loans to American Indians on the Pine Ridge and Rosebud reservations.

15. Defendant's policies and practices as described above constitute discrimination on the basis of race, color, and/or national origin with respect to credit transactions in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 (a)(1).

16. Defendant's policies and practices as described above relating to such activities covered by the Fair Housing Act, as amended, 42 U.S.C. § 3601 et seq., including the extension of credit for the purchase of mobile homes and for the repair of residences constitute:

    a. Discrimination on the basis of race, color, and/or national origin in making available residential real estate-related transactions in violation of Section 805 of the Fair Housing Act, 42 U.S.C. § 3605(a);

    b. Discrimination on the basis of race, color, and/or national origin in the making unavailable or denial of dwellings to persons in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a); and

    c. Discrimination on the basis of race, color, and/or national origin in the terms, conditions, or privileges of the provision of services or facilities in connection with the sale or rental of dwellings, in violation of Section 804(b) of the Fair Housing Act, 42 U.S.C. § 3604(b).

17. Defendant's policies and practices as described above constitute:

    a. A pattern or practice of resistance to the full enjoyment of rights secured by the Equal Credit Opportunity Act, as amended, U.S.C. §§ 1691-1691f;

    b. A pattern or practice of resistance to the full enjoyment of rights secured by Title VIII of the Civil Rights Act of 1966, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619; and

     c.    A denial to a group of persons of rights granted by Title VIII of the Civil Rights Act of 1966, as amended by the Fair Housing Amendments Act of 1966, 42 U.S.C. §§ 3601-3619, that raises an issue of general public importance.

18.    Persons who have been victims of Defendant's discriminatory policies and practices as described above are aggrieved applicants or persons as referenced or defined under the Equal Credit Opportunity Act and the Fair Housing Act. As a consequence of Defendant's policies and practices, these persons have been denied their rights to equal opportunity in housing, credit, and residential real estate-related transactions. Some victims also may have experienced other actual, compensable injuries.

19.    The discriminatory policies and practices of Defendant as described herein were, and are, intentional and willful, and have been implemented with reckless disregard for the rights of American Indians.

WHEREFORE, the United States prays that the Court enter an ORDER that:

1.    Declares that the policies and practices of Defendant constitute a violation of the Equal Credit opportunity Act, as amended, 15 U.S.C. §§ 1691-1691f, and Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619;

2.    Enjoins Defendant, its agents, employees and successors, and all other persons in active concert or participation with it, from discriminating on account of race, color, or national origin in any aspect of their lending activities;

3.    Requires Defendant to develop and submit to the Court for its approval a detailed plan that: (a) remedies Defendant's discriminatory policies and practices; (b) ensures that future American Indian loan applicants are treated in a nondiscriminatory manner; and (c) ensures that, in the future, Defendant will meet the credit needs of the American Indian population in an appropriately defined Community Reinvestment Act territory;

4.    Awards such damages as would fully compensate the victims of Defendant's discriminatory policies and practices for the injuries caused by the Defendant;

5.    Awards punitive damages to the victims of Defendant's discriminatory policies and practices; and

6.    Assesses a civil penalty against Defendant, in order to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice ray require.

JANET RENO
ATTORNEY GENERAL

JAMES P. TURNER
ACTING ASSISTANT ATTORNEY GENERAL

PAUL F. HANCOCK
Chief, Housing and Civil Enforcement Section

RICHARD J. RITTER
JEFFREY M. SENGER
KENNETH H. ZIMMERMAN
Attorneys, Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
P.O. Box 65998
Washington, D.C. 20035-5996
(202)514-4713

KAREN SCHREIER

BOB MALNDEL
Assistant U.S. Attorney
226 Federal Building
515 Ninth Street
Rapid City, SD 57701
(605) 342-7822

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
**NATIONAL COMMUNITY**                          )
**REINVESTMENT COALITION**,                     )
                                                )
                            Plaintiff,          )
                                                )
            v.                                  )          Case No. 1:07-cv-00861 (RCL)
                                                )
**NOVASTAR FINANCIAL, INC**.,                   )
                                                )
and                                             )
                                                )
**NOVASTAR MORTGAGE, INC**.,                    )
                                                )
                            Defendants.         )
_____)


**[PROPOSED] ORDER**

The Court having considered Defendant NovaStar Financial, Inc. and NovaStar

Mortgage, Inc.'s Motion to Dismiss, the memoranda submitted in support and opposition thereto,

and any hearing held on the matter,

IT IS HEREBY ORDERED that:

The motion is DENIED in its entirety.


_____
United States District Judge


Date: _____

The Clerk shall serve a copy of this order on:

John P. Relman
Bradley H. Blower
Elena Grigera
Glenn Schlactus
RELMAN & DANE, PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036-2456
Phone: (202) 728-1888
Fax: (202) 728-0848
jrelman@relmanlaw.com
bblower@relmanlaw.com
egrigera@relmanlaw.com
gschlactus@relmanlaw.com
*Attorneys for Plaintiff,*
*National Community Reinvestment Coalition*

Mitchel H. Kider
David M. Souders
Brian P. Perryman
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036-1609
Phone: (202) 628-2000
Fax: (202) 628-2011
kider@wbsk.com
souders@wbsk.com
perryman@wbsk.com
*Counsel for Defendants,*
*NovaStar Financial, Inc. and*
*NovaStar Mortgage, Inc.*