# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

NATIONAL COMMUNITY
REINVESTMENT COALITION,

               Plaintiff,

           v.

NOVASTAR FINANCIAL, INC. and
NOVASTAR MORTGAGE, INC.,

              Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 07-861 (RCL)

## REPLY MEMORANDUM IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

Mitchel H. Kider (Bar No. 358531)
David M. Souders (Bar No. 441491)
Brian P. Perryman (Bar No. 491034)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036-1609
Telephone: (202) 628-2000
Facsimile: (202) 628-2011
Email: kider@wbsk.com
Email: souders@wbsk.com
Email: perryman@wbsk.com

Counsel for Defendants
NovaStar Financial, Inc. and
NovaStar Mortgage, Inc.

Dated:   Washington, DC
            June 22, 2007

# **TABLE OF CONTENTS**

Introduction ..........................................................................................................................1

Argument ..............................................................................................................................2

    I.      The FHA's Broad Purposes Do Not Justify An Overbroad
           Interpretation Of That Act's Language And Structure .......................................... 3

    II.     This Court Should Not Ignore Congress' Enactment Of A
           Section Devoted To Policing Housing Finance Discrimination ........................... 4

    III.    Plaintiff Misunderstands The Applicability Of The "Specific
           Governs The General" Canon Of Construction To The FHA .............................. 8

    IV.    Plaintiff's Cited Cases Are Unpersuasive ........................................................... 10

    V.     Plaintiff's Citation Of Two HUD Statements Does Not
           Advance This Matter Of Statutory Construction .................................................. 14

    VI.    Defendants' Caselaw Supports A Limited Reading Of § 3604 ........................... 18

Conclusion ......................................................................................................................... 23

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Baltimore Insurance Co.*, 8 U.S. 370 (1808) ............................................................11

*United States v. American Institute of Real Estate Appraisers*,
    442 F. Supp. 1072 (N.D. Ill. 1977) .......................................................11, 12, 13

*Auer v. Robbins*, 519 U.S. 452 (1997) ...............................................................2, 16, 17

*Board of Governors, Federal Reserve System v. Dimension Finance Corp.*,
    474 U.S. 361 (1986)........................................................................3

*Beard v. Worldwide Mortgage Corp.*, 354 F. Supp. 2d 789 (W.D. Tenn. 2005) .........................13

*Bergholm v. Peoria Life Insurance Co.*, 284 U.S. 489 (1932) .....................................10

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984)...................................................................... *passim*

*Christensen v. Harris County*, 529 U.S. 576 (2000)............................................16, 17

*Clifton Terrace Associates, Ltd. v. United Technologies Corp.*,
    929 F.2d 714 (D.C. Cir. 1990)...........................................................11, 20

*Colorado River Indian Tribes v. National Indian Gaming Commission*,
    383 F. Supp. 2d 123 (D.D.C. 2005).......................................................4

*Continental Air Lines, Inc. v. Department of Transportation*,
    843 F.2d 1444 (D.C. Cir. 1988).........................................................3, 4

*D. Ginsberg & Sons v. Popkin*, 285 U.S. 204 (1932) ...............................................5, 8

*Davis v. Michigan Department of Treasury*, 489 U.S. 803 (1989)............................6. 8

*Detweiler v. Pena*, 38 F.3d 591 (D.C. Cir. 1994) ...............................................8, 9

*\*Doe v. National Board of Medical Examiners*, 199 F.3d 146 (3d Cir. 1999).......................6, 7, 9

*Edison Electric Institute v. EPA*, 2 F.3d 438 (D.C. Cir. 1993) ....................................10

*First American Title Co. v. Devaugh*, 480 F.3d 438 (6th Cir. 2007)...............................8

*Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222 (1957) ...................................5, 8

*Gaona v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003) .................................... *passim*

*Gonzales v. Oregon*, 546 U.S. 243 (2006) ................................................................17

*HCSC-Laundry v. United States*, 450 U.S. 1 (1981) ........................................... *passim*

*Hanson v. Veterans Administration*, 800 F.2d 1381 (5th Cir. 1986) ...............................11, 12, 13

*Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000) ..........................13

*Hibbs v. Winn*, 542 U.S. 88 (2004) .........................................................................6

*Honorable v. Easy Life Real Estate System*, 100 F. Supp. 2d 885 (N.D. Ill. 2000)......................13

*Hornbeck Offshore Transport, LLC v. United States Coast Guard*,
   424 F. Supp. 2d 37 (D.D.C. 2006) ...............................................................16, 17

*United States v. Hughes*, 49 F. Supp. 685 (D. Neb. 1994) .........................................13

*Laufman v. Oakley Building & Loan Co.*, 408 F. Supp. 489 (S.D. Ohio 1976) ..........................13

*Lodge 1858, America Federation of Government Employees v. Webb*,
   580 F.2d 496 (D.C. Cir. 1978) ......................................................................9

*MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218 (1994) .................................18

*Mackey v. Nationwide Insurance Cos.*, 724 F.2d 419 (4th Cir. 1984)................................ *passim*

*Mayers v. Ridley*, 465 F.2d 630 (D.C. Cir. 1972) .......................................................11

*United States v. Mead Corp.*, 533 U.S. 218 (2001) .............................................17, 18

*Munoz v. International Home Capital Corp.*, No. 03 Civ. 1099,
   2004 WL 3086907 (N.D. Cal. May 4, 2004) ...................................................13

*NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287 (7th Cir. 1992)..........11, 12, 21

*United States v. Naftalin*, 441 U.S. 768 (1979) ...............................................9

*National Fair Housing Alliance, Inc. v. Prudential Insurance Co. of America*,
   208 F. Supp. 2d 46 (D.D.C. 2002) ...........................................................11, 12

*Nationwide Mutual Insurance Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995)......................11, 12

*Natural Resources Defense Council v. Reilly*, 983 F.2d 259 (D.C. Cir. 1993) ..............................9

*Orca Bay Seafoods v. Northwest Truck Sales, Inc.*, 32 F.3d 433 (9th Cir. 1994) ..........................4

*United States v. Perry*, 360 F.3d 519 (6th Cir. 2004) ...................................................................9

*Rodriguez v. United States*, 480 U.S. 522 (1987) ......................................................................3, 4

*Russello v. United States*, 464 U.S. 16 (1983) ...............................................................................5

*Simms v. First Gibraltar Bank*, 83 F.3d 1546 (5th Cir. 1996)..........................................2, 18, 20

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .................................................................2, 17, 18

*Steptoe v. Savings of America*, 800 F. Supp. 1542 (N.D. Ohio 1992) ...........................................13

*Stewart v. Smith*, 673 F.2d 485 (D.C. Cir. 1982)................................................................. *passim*

*Vencor, Inc. v. Physicians Mutual Insurance Co.*, 11 F.3d 1323 (D.C. Cir. 2000) ........................3

*Wachovia Bank & Trust Co., N.A. v. National Student Marketing Corp.*,
    650 F.2d 342 (D.C. Cir. 1980) ..................................................................................................9

*Wai v. Allstate Insurance Co.*, 75 F. Supp. 2d 1 (D.D.C. 1999)..........................................11, 12

*Webster Bank v. Oakley*, 265 Conn. 539, 830 A.2d 139 (2003) ........................................ *passim*

*White v. Burlington Northern & Santa Fe Railway*, 364 F.3d 789 (6th Cir. 2004)........................5

## STATUTES AND REGULATIONS

42 U.S.C. § 3604 ........................................................................................................... *passim*

42 U.S.C. § 3605 ........................................................................................................... *passim*

24 C.F.R. § 100.50..............................................................................................................17

24 C.F.R. § 100.70..............................................................................................................17

24 C.F.R. § 100.120............................................................................................................19

24 C.F.R. § 100.204............................................................................................................19

## INTRODUCTION

In their opening Memorandum, defendants NovaStar Mortgage, Inc., and NovaStar Financial, Inc., showed that the language and structure of 42 U.S.C. §§ 3604 and 3605 compel the conclusion that § 3605 is the sole vehicle for housing finance discrimination claims.  It is a basic principle of statutory construction that a specific statutory provision controls over a general one, particularly where the provisions lie within the same legislative enactment.  Plaintiff's opposition to this principle cannot save its claims under § 3604.

First, plaintiff contends that the federal Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, should be given a broad construction simply because it has broad purposes.  But that Act's "broad purposes" do not justify an overbroad interpretation.  The Court would be writing a different statute, not just construing it, by treating the words and structure of the FHA as having little meaning and looking instead to the values underlying the language to be construed.

Second, plaintiff contends that because the operative language of § 3604's various subsections are broadly written, the Court should find that that section encompasses housing finance discrimination claims.  But even when the literal terms of statutory provisions would allow the specific language of a statute to be controlled by the more general, this Court cannot ignore evidence that Congress intended to address a specific situation through special legislation. In this case, the Court should not ignore Congress' enactment of a particular section – § 3605 – that is devoted to policing housing finance discrimination.

Third, plaintiff argues that the "specific governs the general" canon of construction does not apply unless the more specific provision is in irreconcilable conflict with the general provision.  This misunderstands the canon and its application here.  The basic canon of statutory interpretation that a more specific provision takes precedence over a more general one is true

even when there is no direct conflict between the provisions. The Supreme Court's decision in *HCSC-Laundry v. United States*, 450 U.S. 1 (1981), illustrates this point neatly.

Fourth, plaintiff cites a number of cases that it contends support its position that § 3604 applies to housing finance discrimination claims. A closer inspection of the cases, however, reveals that most are either distinguishable, or simply assume that § 3604 applies without supplying further analysis or reasoning. In any event, none of plaintiff's cited cases constitute precedent binding on this Court.

Fifth, plaintiff cites an opinion letter and a notice of proposed rulemaking from the Department of Housing and Urban Development ("HUD") that it contends demonstrate HUD's position that § 3604 applies to housing finance discrimination. These statements, however, do not go nearly as far as plaintiff would have the Court believe and, in any event, cannot be accorded any deference under the Supreme Court's decisions in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), or *Auer v. Robbins*, 519 U.S. 452 (1997).

Sixth, although plaintiff strives mightily to distinguish or disparage the rulings in *Gaona v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003), *Simms v. First Gibraltar Bank*, 83 F.3d 1546 (5th Cir. 1996), *Mackey v. Nationwide Insurance Cos.*, 724 F.2d 419 (4th Cir. 1984), and *Webster Bank v. Oakley*, 265 Conn. 539, 830 A.2d 139 (2003), these cases still support defendants' position that § 3604 should not be read as expansively as plaintiff wishes.

Accordingly, for the reasons more fully set forth below, and as set forth in the opening Memorandum, the Court should dismiss plaintiff's claims under § 3604.

## **ARGUMENT**

Plaintiff's arguments, as they are outlined above, are addressed seriatim herein.

I.     THE FHA'S "BROAD PURPOSES" DO NOT JUSTIFY AN OVERBROAD
       INTERPRETATION OF THAT ACT'S LANGUAGE AND STRUCTURE__

        Plaintiff initially endeavors to ground its arguments in the ill-defined notion that "the Fair

Housing Act must be given a 'generous construction' to further Congress' broad purpose."  Pl.'s

Memo. at 7.  Plaintiff describes how "Congress crafted an expansive statute aimed at a broad

range of discriminatory practices affecting the housing market."  *Id.*  But it is no argument that §

3604 should be construed broadly simply because that provision has broad purposes.  "The 'plain

purpose' of legislation . . . is determined in the first instance with reference to the plain language

of the statute itself.  Application of 'broad purposes' of legislation at the expense of specific

provisions ignores the complexity of the problems Congress is called upon to address and the

dynamics of legislative action."  *Bd. of Governors, Fed. Reserve Sys. v. Dimension Fin. Corp.*,

474 U.S. 361, 373-74 (1986) (quoted in Defs.' Memo. at 8).

        Plaintiff's contention that the Supreme Court's FHA decisions "are explicitly animated

by the broad purpose and language of the Act" is, at least to some degree, well-taken.  Pl.'s

Memo. at 9.  "But no legislation pursues its purposes at all costs."  *Rodriguez v. United States*,

480 U.S. 522, 525-26 (1987).  In this vein, "it frustrates rather than effectuates legislative intent

simplistically to assume that ***whatever*** furthers the statute's primary objective must be the law."

*Id.* at 526 (emphasis in original).  "'Congress may be unanimous in its intent to stamp out some

vague social or economic evil; however, because its Members may differ sharply on the means

for effectuating that intent, the final language of the legislation may reflect hard-fought

compromises.  Invocation of the 'plain purposes' of legislation at the expense of the terms of the

statute itself takes no account of the processes of compromise and, in the end, prevents the

effectuation of congressional intent.'"  *Vencor, Inc. v. Physicians Mut. Ins. Co.*, 211 F.3d 1323,

1325 (D.C. Cir. 2000) (quoting *Dimension Fin.*, 474 U.S. at 373-74); *see also Cont'l Air Lines,*

*Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1450-51 (D.C. Cir. 1988). This Court "'would be writing a different statute, not just construing it, by treating the words as having no meaning and looking instead to the values underlying the language to be construed so that we can create law effectuating those values.'" *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 383 F. Supp. 2d 123, 144 (D.D.C. 2005) (quoting *Orca Bay Seafoods v. Northwest Truck Sales, Inc.*, 32 F.3d 433, 436 (9th Cir. 1994)). If the language of a provision is sufficiently clear in its context, there is no occasion to examine the additional considerations of policy that may have influenced the lawmakers in their formulation of the statute. *Rodriguez*, 480 U.S. at 526.

Thus, in construing the interplay between FHA §§ 3604 and 3605, this Court is not enslaved by any "broad purposes" the Court may discern within the Act. Plaintiff's suggestion notwithstanding, a statute's "broad purposes" are not a license for its overbroad interpretation.

## II. THIS COURT SHOULD NOT IGNORE CONGRESS' ENACTMENT OF A SECTION DEVOTED TO POLICING HOUSING FINANCE DISCRIMINATION

Plaintiff next asserts that defendants "offer[] virtually no analysis of the particular words Congress chose to use in 42 U.S.C. § 3604(a), (b), (c), (f)(1) and (f)(2)." But defendants stated in their opening Memorandum that "some courts have held, and plaintiff is apt to argue, that the language 'otherwise make unavailable' in § 3604(a) and (f) is sufficiently broad enough to make those subsections applicable to the mortgage financing arena." Defs.' Memo. at 6. Defendants' principal argument in this respect is that even when the literal terms of statutory provisions would allow the specific language to be controlled by the more general, the Court cannot ignore evidence that Congress intended to address a specific situation through special legislation. This argument is equally applicable to plaintiff's construction of subsections (b) and (f)(2), which it

says apply to housing finance discrimination claims "because mortgage lending constitutes 'services' provided 'in connection with' the 'sale . . . of a dwelling.'"[1]  Pl.'s Memo. at 12.

The language cited by plaintiffs is admittedly inclusive.  That is beside the point. "'However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment.  Specific terms prevail over the general in the same or another statute which otherwise might be controlling.'"  *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957) (quoting *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932)); *Stewart v. Smith*, 673 F.2d 485, 492 (D.C. Cir. 1982) ("But even when the literal terms of statutory provisions would allow the specific language to be controlled by the more general, we cannot ignore evidence that Congress intended to address a specific situation through special legislation.").  "The rule against superfluities complements the

---

[1] Subsection (c) of § 3604 is a special case in that, no matter how hard the language can be tortured, it will not yield the result that it applies to lending.  Thus, it is not even necessary to examine § 3604(c) in light of § 3605 (although the contextual argument would apply equally well in any event).  That is because subsection (c) only applies "with respect to the sale or rental of a dwelling."  Compare this limited language with subsection (b), which prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling, ***or in the provision of services or facilities in connection therewith***."  Subsection (b) contains language identical to subsection (c) – "sale or rental of a dwelling" – but (b) goes further with the addition – not found in (c) – of the highlighted language.  "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983).  Plaintiff's curious argument that the phrase "with respect to" can wrest subsection (c) from its textual moorings is a non-starter.  In this context, the phrase "with respect to" plainly limits subsection (c); it does not expand it.  *Accord White v. Burlington Northern & Santa Fe Ry.*, 364 F.3d 789, 799 n.5 (6th Cir. 2004) ("Although both § 2000e-2(a)(1) and § 2000e-3(a) use the phrase 'discriminate against,' the former specifies that the prohibited discrimination must be 'with respect to his compensation, terms, conditions, or privileges of employment,' while the anti-retaliation provision contains no such language.  The parties dispute whether this additional language is a limitation or an expansion of the conduct prohibited.  We have never before distinguished between the types of conduct prohibited in the different provisions, and we do not do so here.  We find it untenable to interpret the additional language as an expansion of prohibited conduct because 'with respect to' is a phrase commonly used to limit.").

principle that courts are to interpret the words of a statute in context." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

And this is precisely the point defendants made in citing *HCSC-Laundry v. United States*, 450 U.S. 1 (1981). Plaintiff's attempt to distinguish *HCSC Laundry* is unavailing. It asserts that, in that case, "[a] specific provision of the tax code plainly denied a tax exemption to an organization, while a more general provision arguably granted it; in light of this conflict, the Court applied the canon and followed the specific provision." Pl.'s Memo. at 26. This characterization of the case could not be more incorrect. The "specific provision" at issue in *HCSC Laundry* – IRC § 501(e) – did ***not*** deny a tax exemption to the petitioning laundry service. Rather, § 501(e) provided an exemption to "cooperative hospital service organizations." *See* 450 U.S. at 3 n.3. A laundry service might otherwise have been considered a cooperative hospital service organization, but a service of that type was not listed within § 501(e). *Id.* at 5-6. However, nowhere did § 501(e) specifically deny the laundry service an exemption. There was, therefore, no "conflict" between the provisions when the Court found that the more general § 501(c)(3) could not otherwise afford the service an exemption. Plaintiff's attempt to distinguish the *HCSC Laundry* case on this basis is in error.

*HCSC Laundry* was also applied in *Doe v. National Board of Medical Examiners*, 199 F.3d 146 (3d Cir. 1999), another case analogous to the matter at bar, and one which vindicates defendants' reading of *HCSC Laundry*. In *Doe*, the plaintiff was a medical student with multiple sclerosis. *Id.* at 148. He received extra time from the National Board of Medical Examiners ("NBME") to take the Medical Licensing Examination as an accommodation for his disability.

*Id.* The NBME followed a practice of annotating ("flagging") the scores of test takers who received testing accommodations if, in its judgment, the accommodations affected the comparability of the accommodated score to nonaccommodated scores. *Id.* Doe sued the NBME to enjoin it from annotating his scores to reflect that he received accommodations. *Id.* The district court analyzed the "flag" under § 302 of the Americans with Disabilities Act of 1990 ("ADA"), "which sets forth general provisions prohibiting discrimination in public accommodations." *Id.* at 154. The district court, however, failed to consider whether § 309 of the ADA, "the more specific statute governing discrimination by providers of examinations," effectively defined the requirements of the ADA. *Id.* The *Doe* court found *HCSC Laundry* to be directly on point, and held:

> Here, by analogy, both 309 and 302 are parts of Title III, which prohibits discrimination in public accommodations. We believe that the rationale of the "specific governs the general" canon counsels that we treat section 309 as Congress's specific definition of what Title III requires in the context of examinations. Moreover, although applying section 302 would not necessarily undermine limitations created by section 309 (neither section explicitly mentions flagging), it would render 309 superfluous. If section 302 settled the question, there would have been no need to enact section 309. Accordingly, we conclude that section 309 governs in this case.

*Id.* at 155.

*Doe*, therefore, stands for the proposition that even if there is no conflict between the two provisions at issue – even if "applying section 302 would not necessarily undermine limitations created by section 309" – the canon of "specific governs the general" counsels against unduly overinclusive interpretations. *See also Stewart*, 673 F.2d at 492 (holding that, although two statutory procedures for setting maximum age policies are not inconsistent with each other, and the provisions "do not, in themselves, set up an irreconcilable conflict, since all three agencies could be required to concur in a maximum age policy," in the absence of "any indication that

Congress intended such a dual procedure, the result would, at the least require an awkward reading of Congress' enactments.").

In this case, the text of 42 U.S.C. § 3605 specifically evinces Congress' intent to prohibit housing finance discrimination. "If [§ 3604] was designed to reach every discriminatory act that might conceivably affect the availability of housing, [§ 3605's] specific prohibition of discrimination in the provision of financing would have been superfluous." *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 423 (4th Cir. 1984). No doubt the various subsections of § 3604 are broad and inclusive, but that is no reason to apply them at § 3605's expense.

## III.  PLAINTIFF MISUNDERSTANDS THE APPLICABILITY OF THE "SPECIFIC GOVERNS THE GENERAL" CANON OF CONSTRUCTION TO THE FHA___

Compounding its error, plaintiff further argues that "the canon that a specific statutory provision controls and limits a more general one has no application here." Pl.'s Memo. at 25. It argues that "[w]hatever the canon's 'combative power against a statute's plain meaning,' it applies 'only in the face of 'irreconcilably conflicting statutes.'" *Id.* (quoting *Detweiler v. Pena*, 38 F.3d 591, 594 (D.C. Cir. 1994)). Not so – at least not to the extent that plaintiff believes. Indeed, if the Court were to leave plaintiff's legal assertions unexamined, there would be troubling implications, as evidenced from the previously-cited Supreme Court cases (*HCSC Laundry*, *Fourco Glass*, *D. Ginsberg & Sons*)[2] which did not concern conflicting statutes, as well as from numerous decisions of the federal circuit courts of appeal. *See, e.g.*, *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 450-51 (6th Cir. 2007) ("'One of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one.' ***This is true even when there is no direct conflict between the general statute and the specific one.***")

_____

[2] *Accord Davis*, 489 U.S. at 809 ("Although the State's hypertechnical reading of the nondiscrimination clause is not inconsistent with the language of that provision examined in isolation, statutory language cannot be construed in a vacuum.").

(quoting *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004) (internal citations omitted; emphasis added); *Doe*, 199 F.3d at 155; *Stewart*, 673 F.2d at 492; *Lodge 1858, Am. Fed'n of Gov't Employees v. Webb*, 580 F.2d 496, 510-11 & n.29 (D.C. Cir. 1978) (applying the principle that however inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment, even though the specific provision at issue in the case did not repeal the general provision, and only "conflicted" with the general provision to the extent that the specific provision was an additional source of authority).

Again, the *Doe* court explains:

> For the purposes of applying the "specific governs the general" canon of construction, it is important to distinguish between arguments regarding simultaneously enacted provisions of the same act, where the Supreme Court has found the canon to be a useful interpretive guide even absent a conflict between the provisions, and arguments for implied repeal, where the Supreme Court has sometimes found the canon to have force only when there is a "positive repugnancy" between two different statutes.

199 F.3d at 155 n.6.

Several of plaintiff's cases can be distinguished on this basis. For example, *United States v. Naftalin*, 441 U.S. 768 (1979), *Detweiler v. Pena*, 38 F.3d 591 (D.C. Cir. 1994), and *Wachovia Bank & Trust Co., N.A. v. National Student Marketing Corp.*, 650 F.2d 342 (D.C. Cir. 1980), each dealt with overlap between separate legislative enactments. There is little surprise that those courts found no irreconcilable conflict or implied repeal between different statutes. Plaintiff's other cases are distinguishable, too. For example, plaintiff cites *Natural Resources Defense Council v. Reilly*, 983 F.2d 259 (D.C. Cir. 1993). But the Court there found neither superfluity in related statutory provisions nor evidence that Congress intended to address a specific situation through special legislation. *See* 983 F.2d at 271-72 ("If ORVR standards had been promulgated on time, the Stage II requirements in moderate nonattainment areas would

merely have been superfluous.  *On the other hand*, if EPA missed the statutory deadline – as it in fact has – some vapor emission control would be provided.  Although perhaps not the most elegant framework, it was not unreasonable for Congress to provide for contingent environmental protection in the event that EPA missed the statutory deadline, given EPA's record with regard to implementing the CAA.  Thus, the overlap between sections 182(b)(3) and 202(a)(6) demonstrates not an ambiguity in the statute, but congressional prudence in providing for foreseeable administrative delays.") (internal citations omitted; emphasis added).[3]

Through § 3604, Congress enacted a general provision.  Through § 3605, Congress enacted a narrower provision regarding the making and purchasing of loans or providing other financial assistance.  Under plaintiff's interpretation, the former provision subsumes the latter.  But such a broad interpretation does not explain why Congress would bother enacting § 3605 in the first place, and would render § 3605 superfluous.  This is strong evidence that Congress intended to address a specific situation through special legislation and, accordingly, the canon of "specific governs general" applies.[4]

## IV.    PLAINTIFF'S CITED CASES ARE UNPERSUASIVE

Plaintiff cites numerous cases in its opposing Memorandum.  The cases can generally be classified into three categories:  (1) obiter dicta; (2) distinguishable; and (3) affording only cursory or non-existent analysis.  None qualifies as precedent binding on this Court.

---

[3] Plaintiff's other cited case, *Edison Electric Institute v. EPA*, 2 F.3d 438 (D.C. Cir. 1993), can be distinguished on similar terms.

[4] Plaintiff's reliance on *Bergholm v. Peoria Life Insurance Co.*, 284 U.S. 489 (1932), for the proposition that a canon of construction cannot alter the plain language of a statute does not advance its position.  Defendants are not asking the Court to alter the meaning of either §§ 3604 or 3605.  They are simply asking the Court to read § 3604 to the extent it can be read without encroaching upon § 3605's province.

First, the dicta. For obvious reasons, plaintiff relies heavily on the Court of Appeals' fleeting suggestion in *Clifton Terrace Associates, Ltd. v. United Technologies Corp.*, 929 F.2d 714 (D.C. Cir. 1990), that the denial of mortgage financing "might" result in making housing unavailable. Plaintiff would have this Court elevate this statement from a comment that had absolutely no effect on the resolution of the matter and that was qualified by the word "might," to what plaintiff considers "analysis" that "is closely tied to the holding." Pl.'s Memo. at 14. This gross overstatement does no justice to the principles of stare decisis. "It is extremely dangerous to take general dicta upon supposed cases not considered in all their bearings, and, at best, inexplicitly stated as establishing important law principles." *Alexander v. Baltimore Ins. Co.*, 8 U.S. (4 Cranch) 370, 379 (1808) (Marshall, C.J.). The comment in *Clifton Terrace* is plainly obiter dicta, and should be treated as no more than what it is.

Second, the distinguishable cases. These are plentiful. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992); *Hanson v. Veterans Admin.*, 800 F.2d 1381 (5th Cir. 1986); *Mayers v. Ridley*, 465 F.2d 630 (D.C. Cir. 1972); *Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co. of America*, 208 F. Supp. 2d 46, 56 (D.D.C. 2002); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1 (D.D.C. 1999); *United States v. Am. Inst. of Real Estate Appraisers*, 442 F. Supp. 1072 (N.D. Ill. 1977). In *Mayers*, the Court of Appeals held that § 3604(c) applied to bar the District of Columbia's Recorder of Deeds from accepting deeds containing racial covenants. The case dealt with discrimination in course of the transfer of the seller's title. The case did not implicate, or even purport to implicate, the making or purchasing of loans or providing other financial assistance. The case did not mention § 3605 at all. There is, therefore, no special insight offered

by *Mayers* that cannot otherwise be gleaned from any other case concerning § 3604's prohibition on discrimination in connection with the rental or sale of housing.

The same can be said of plaintiff's cited line of cases concerning § 3604's applicability to homeowners insurance. Those cases – including *Nationwide Mutual*, *American Family Mutual*, *National Fair Housing Alliance* and *Wai* – each dealt with discrimination in the provision of homeowners insurance, not financing. As noted in defendants' opening Memorandum, *see* Defs.' Memo. at 12 n.7, in 1989, HUD issued regulations that specifically interpreted § 3604 of the FHA to prohibit discrimination in the provision of homeowners insurance. *See* 24 C.F.R. § 100.70(d)(4). Citing the rule of *Chevron*, these courts deferred to HUD's regulation. *See, e.g.*, *Nat'l Fair Hous. Alliance*, 208 F. Supp. 2d at 55-57. These cases differ from the case *sub judice* because HUD has never issued a regulation governing lending that derives from § 3604. Moreover, while the statutory text of the FHA ***does not*** specifically mention insurance, it ***does*** specifically mention lending. Accordingly, the canon that the "specific governs the general" that guides this lending case simply would not apply in the insurance context. None of the cases had occasion to examine or opine upon § 3605's purpose in the FHA's overall scheme as it relates to housing finance and, therefore, offer no assistance in this case.

Plaintiff's cases concerning § 3604's applicability to appraisals (*Hanson* and *American Institute of Real Estate Appraisers*) are also distinguishable. These cases were decided before a 1988 amendment to § 3605 added the "appraising of residential real property" to the section's scope. Pub. L. No. 100-430, § 6(c), 102 Stat. 1622 (1988). It would be more natural, prior to 1988, for a court to apply § 3604 to appraisal practices; it would be less natural for it to do so after the 1988 amendment. Indeed, that Congress felt the need to regulate appraisal practices in § 3605 even though courts had already found it to be regulated by § 3604 is further evidence that

Congress intended to deal with housing finance discrimination in § 3605 specifically, and with other forms of housing discrimination in § 3604. Appraisals are intimately related to the provision of residential mortgage loans, *see Steptoe v. Savs. of America*, 800 F. Supp. 1542, 1546 (N.D. Ohio 1992) ("An appraisal sufficient to support a loan request is a necessary condition precedent to a lending institution making a home loan."), and so the placement of the 1988 amendment dealing with appraisals within § 3605 was complementary.[5]

Last are the cases giving only cursory – or no – consideration to whether § 3605 is the legislatively-designated vehicle for housing finance discrimination claims. *See, e.g.*, *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789 (W.D. Tenn. 2005); *Hargraves v. Capital City Mortg. Corp.*, 140 F. Supp. 2d 7 (D.D.C. 2000); *Honorable v. Easy Life Real Estate Sys.*, 100 F. Supp. 2d 885 (N.D. Ill. 2000); *United States v. Hughes*, 849 F. Supp. 685 (D. Neb. 1994). Most of these cases simply assumed, without stating why, § 3604 also applies to such claims. Additionally, these cases did not address the statutory construction argument raised here, that the specific § 3605 governs over the general § 3604. The two possible exceptions are *Laufman v. Oakley Building & Loan Co.*, 408 F. Supp. 489 (S.D. Ohio 1976), and *Munoz v. International Home Capital Corp.*, No. 03 Civ. 1099, 2004 WL 3086907 (N.D. Cal. May 4, 2004), an unpublished decision which follows *Laufman*. Both *Laufman*, an older case decided prior to the 1988 amendments to the FHA and the promulgation of HUD's implementing regulations, and *Munoz* should not be followed. Although noting that the defendants had raised the argument, neither *Laufman* nor *Munoz* satisfactorily addressed the statutory construction argued herein,

---

[5] And for this same reason, the *Steptoe* case, which assumed without any comment that § 3604 applied to appraisal practices, was unnecessarily overbroad. *See* 800 F. Supp. at 1545 & n.6. Additionally, it is noteworthy that plaintiff implicitly recognizes the inapplicability of the pre-amendment *Hanson* and *American Institute of Real Estate Appraisers* cases, finding it "particularly significant that *Steptoe* was decided after section 3605 was amended in 1988 to reference appraisals specifically." Pl.'s Memo. at 18.

merely deciding that § 3604's broad language was enough to merit applicability to housing finance discrimination claims.  In any event, these cases were wrongly decided.

In short, plaintiff's cited authorities are too weak to compel the overbroad statutory construction that plaintiff asks the Court to render.

## V.    PLAINTIFF'S CITATION OF TWO HUD STATEMENTS DOES NOT ADVANCE THIS MATTER OF STATUTORY CONSTRUCTION____

Plaintiff next claims that "HUD has determined that section 3604 does, in fact, apply to lending."  Pl.'s Memo. at 20.  It notes that defendants' opening Memorandum set forth "the headings in HUD's regulations instead of their actual words."  *Id.*  That is true, but only because "loans and their enforcement are not mentioned anywhere within the comprehensive array of detailed regulations that comprise" subparts B and D, *Webster Bank v. Oakley*, 265 Conn. 539, 562, 830 A.2d 139, 154 (2003), while subpart C "contains ample references to loans and mortgages."  *Id.*  Notably, plaintiff's opposing Memorandum fails to identify a single regulation within subpart B or D that concerns housing finance.  *See* Pl.'s Memo. at 20-21.

Instead, plaintiff asserts that "subpart B reaches lending just as the Act itself does – by including language expansive and flexible enough to reach the wide range of activities and actors that might interfere with the national policy of achieving fair housing."  *Id.* at 21.  But just because the HUD regulation implementing § 3604 restates the very same words spoken by Congress in that section does not mean that subpart B regulates housing finance.  Such tautological reasoning does not support plaintiff's case.  In fact, the opposite is true:  "The organizational scheme of the regulations promulgated pursuant to the FHA[] indicates that the secretary did not contemplate mortgage related matters arising under 42 U.S.C. § 3604." *Webster Bank*, 265 Conn. at 561, 830 A.2d at 153-54.

Plaintiff next turns to two HUD issuances for the proposition that "HUD's own explanations of its regulations is in accord with NCRC's." *Id.* The first issuance is a 1978 letter from HUD's general counsel. Pl.'s Ex. A. The question addressed by the letter is whether the practice of ***insurance*** redlining is covered by § 3604(a). Although the letter quotes the *Laufman* court's language as evidence that § 3604(a) "has been construed to prohibit conduct much broader than that constituting a refusal to sell or rent," nowhere does the letter state that it is HUD's position that § 3604(a) applies to housing finance discrimination. The 1978 letter is actually evidence of very little in the way of HUD's stance.

Plaintiff also relies on a 1988 statement made by HUD in a notice of proposed rulemaking published in the Federal Register to the effect that "discriminatory refusals to provide municipal services or adequate property or hazard insurance as well as discriminatory appraisal and financing practices" have been "interpreted by the Department and by courts to render dwellings unavailable under the 'otherwise make unavailable' in the Fair Housing Act." Implementation of the Fair Housing Amendments Act of 1988, 53 Fed. Reg. 44992, 44997 (Nov. 7, 1988). But this statement remains ambiguous as to HUD's position: HUD ***and the courts*** have identified a litany of practices that could "otherwise make unavailable" housing but it is still not clear that HUD specifically approves the court decision (presumably, *Laufman*) that held financing to fall within § 3604's scope. It is not clear from the 1988 statement that HUD itself approves so expansive a reach and, as we have seen, neither did the 1978 letter.

But, ultimately, it is of no consequence what HUD really meant in these issuances. Even construing either of these statements in the manner plaintiff has done, this Court is not required

to defer to an agency interpretation at odds with the plain language and structure of the FHA.[6]

Neither of the statements is a regulation or has the force of law.  The 1978 opinion letter was just

that:  an opinion letter.  The 1988 statement was contained in a notice of proposed rulemaking.

Neither of these is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837 (1984).  "Interpretations such as those in opinion letters – like

interpretations contained in policy statements, agency manuals, and enforcement guidelines, all

of which lack the force of law – do not warrant *Chevron*-style deference."  *Christensen v. Harris*

*County*, 529 U.S. 576, 587 (2000).  In any event, *Chevron* deference would not come into play

because both parties now agree that the Court can discern congressional intent from the FHA's

plain language.  *See* Pl.'s Memo. at 10 ("The statute's words demonstrate that section 3604 does,

in fact, plainly and unambiguously apply to NovaStar's discriminatory lending policies.");

*Hornbeck Offshore Transp., LLC v. United States Coast Guard*, 424 F. Supp. 2d 37, 47 (D.D.C.

2006) (noting that inquiry into whether *Chevron* applies terminates where "the Court can easily

discern Congressional intent from the statutes' plain language").

Nor are the statements entitled, as plaintiff claims, *see* Pl.'s Memo. at 23-24, to deference

under the Supreme Court's decision in *Auer v. Robbins*, 519 U.S. 452 (1997).  *Auer* stated that an

administrative rule may receive deference if it interprets the issuing agency's own ambiguous

regulation.  519 U.S. at 461-63.  But that case is inapplicable here.  In *Auer*, the underlying

regulations gave specificity to a statutory scheme the Secretary of the Department of Labor was

charged with enforcing and reflected the considerable experience and expertise the Department

---

[6] "The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.  If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."  *Chevron*, 467 U.S. at 843 n.9.

had acquired over time with respect to the complexities of the Fair Labor Standards Act. *See*

*Gonzales v. Oregon*, 546 U.S. 243, ___, 126 S. Ct. 904, 915 (2006) (explaining *Auer*). "Here, on

the other hand, the underlying regulation does little more than restate the terms of the statute

itself." *Id.* The language of subparts B and D of HUD's implementing regulations, 24 C.F.R. pt.

100, comes from Congress, not HUD. Even plaintiff concedes this much. *See* Pl.'s Memo. at 21

("What matters is that subpart B's language plainly reaches discriminatory lending as part of the

broad range of conduct that the Act and the regulations prohibit. It does so through 24 C.F.R. §§

100.50(b)(3) and 100.70(b), as explained, as well as through four other ***reiterations of the broad***

***language Congress used in section 3604***.") (emphasis added). The language that the 1988

notice of proposed rulemaking addresses comes from Congress, not HUD, and the near-

equivalence of the statute and the regulation (subparts B and D) belies plaintiff's argument for

*Auer* deference. *See Gonzales*, 546 U.S. at ___, 126 S. Ct. at 915 ("The language the Interpretive

Rules addresses comes from Congress, not the Attorney General, and the near-equivalence of the

statute and regulation belies the Government's argument for *Auer* deference.").

Finally, the HUD statements are not even "entitled to respect" under the Supreme Court's

decision in *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Skidmore* applies only to the extent an

agency's interpretation has the "power to persuade." *Christensen*, 529 U.S. at 587; *Hornbeck*

*Offshore*, 424 F. Supp. 2d at 49. Ultimately, *Skidmore* deference "hinges upon the ability of an

agency to convince the court that its rationale merits respect." 424 F. Supp. 2d at 49. The

weight accorded to the interpretation "'will depend upon the thoroughness evident in its

consideration, the validity of its reasoning, its consistency with earlier and later pronouncements,

and all those factors which give it power to persuade, if lacking power to control.'" *Id.* (quoting

*United States v. Mead Corp.*, 533 U.S. 218, 219 (2001)).

HUD's statements are not entitled to deference, as three important factors prevent its reasoning from being persuasive.  First, the statements – to the extent they can be read as plaintiff wishes to read them – run counter to the FHA's plain language and structure.  *See id.* (*Skidmore* deference not applied where interpretation ran counter to relevant statutes' plain language); *see also MCI Telecommunications Corp. v. AT&T*, 512 U.S. 218, 229 (1994) (stating that "an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear").  Second, there is no "thoroughness" evident in HUD's consideration.  The 1978 letter merely quotes the language of a district court opinion, and was issued in the inapposite context of insurance redlining.  The 1988 notice of proposed rulemaking contains no substantive analysis whatsoever, except to make the obvious point that § 3604's language is broad and that the proposed implementing regulation's language will also be broad.  Third, both of the statements are purely legal conclusions, and did not require HUD's specialized knowledge, experience or expertise in order to make them.  *See id.* (refusing to apply *Skidmore* deference where "there is nothing in the administrative record that shows that the Agency utilized any specialized knowledge or information.")

Consequently, nothing remains of plaintiff's argument that HUD statements in this arena are controlling, or even relevant.  Those statements are, indeed, singularly unhelpful.

## VI.    DEFENDANTS' CASELAW SUPPORTS A LIMITED READING OF § 3604

Defendants cited four cases that support their statutory and regulatory construction: *Gaona v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003), *Simms v. First Gibraltar Bank*, 83 F.3d 1546 (5th Cir. 1996), *Mackey v. Nationwide Insurance Cos.*, 724 F.2d 419 (4th Cir. 1984), and *Webster Bank v. Oakley*, 265 Conn. 539, 830 A.2d 139 (2003).  Naturally, plaintiff disputes each case's value to this action.

First, plaintiff evidently misunderstands the decision in *Gaona*.  That case involved an FHA claim under § 3605 and its implementing regulation, 24 C.F.R. § 100.120(b).  324 F.3d at 1052 & 1056-57.  The Eighth Circuit found that the plaintiffs in that case (the Gaonas) had not stated a claim under § 3605 and § 100.120(b) because "§ 3605 does not define discrimination to include a lender's refusal to make reasonable accommodations."  *Id.* at 1057.  The plaintiff in this case (NCRC) correctly states that "[i]n a footnote, the court also addressed the claim that a different regulation, 24 C.F.R. § 100.204, required the relief sought."  Pl.'s Memo. at 30.  Beyond this point, plaintiff begins misconstruing *Gaona*.  Still referring to § 100.204 – not § 100.120(b) – plaintiff claims that the Eighth Circuit "concluded that the regulation did not apply, first because it concerned 'accommodations . . . necessary' for the 'use and enjoy[ment] of a dwelling unit, and the defendant actually provided the mortgage.  Implicit in this rationale is an acknowledgement that the failure to provide the mortgage would have made the dwelling 'unavailable' to the plaintiffs."  Pl.'s Memo. at 30 (alterations in original; internal citation omitted).  But plaintiff is confusing the regulation that the Eighth Circuit held "does not define discrimination to include a lender's refusal to make reasonable accommodations," 324 F.3d at 1057, – that is, § 100.120(b) – for an entirely different regulation – § 100.204.  The very basis of plaintiff's distinction of *Gaona*, therefore, rests on a flawed proposition; that case most certainly does not imply "that the failure to provide the mortgage would have made the dwelling 'unavailable' to the plaintiffs."  Pl.'s Memo. at 30.  Misidentifying the regulation at issue in the applicable *Gaona* footnote does not aid plaintiff's cause.

Plaintiff does address the ***actual*** reason for the *Gaona* holding, inaccurately calling it "a secondary reason."  *Id.*  Plaintiff correctly observes that the Eighth Circuit held that § 100.204 "applied only to section 3604(f)(2), 'which bars discrimination in sales and rentals, rather than

19

loans.'" *Id.* at 31 (quoting 324 F.3d at 1056 n.7).  Left with a holding that is obviously adverse

to its position, plaintiff can only argue that "nothing in *Gaona* suggests that the expansive

language of subsections (a), (c) and (f)(1) does not apply to lending."[7] *Id.*  Not so subtly omitted

from plaintiff's listing, however, is subsection (b), which contains operative language identical to

subsection (f)(2):  "sale or rental of a dwelling, or in the provision of services or facilities in

connection with such dwelling."  *Mutatis mutandi*, then, *Gaona* must apply with equal force to

subsection (b) as it does to subsection (f)(2).  The holding of *Gaona* must also be inferentially

extended to subsection (c), because the operative language there ("with respect to," *see* Pl.'s

Memo. at 13) is not so broad as the operative language of subsections (b) and (f)(2).  And the

holding can be extended to subsection (c) and (f)(1) because the operative language in those

provisions ("otherwise make unavailable," *see id.* at 12) is at least as broad as the operative

language of subsections (b) and (f)(2).  *See id.* at 11-12.

Second, the *Simms* case also supports defendants' position.  *See* 83 F.3d at 1554 n.27

(opining that § 3604 would be inapplicable to the borrower's claims, because "the plain language

of the two provisions seems to indicate that § 3605 is the vehicle for discrimination claims

involving the financing of residential housing.").  The only thing plaintiff says about *Simms* –

because it is the only thing that ***can*** be said – is that the cited footnote is dicta.  Pl.'s Memo. at

28.  It is; defendants admitted as much in their opening Memorandum.  Defs.' Memo. at 12.  But

plaintiffs are not shy about citing dicta to this Court, *see* Pl.'s Memo. at 13-14 (relying on *Clifton

Terrace*), and because dicta is not binding, the Court is free to weigh competing statements.

---

[7] Plaintiff also asserts that the *Gaona* court "offered no analysis" for its holding.  Of course, plaintiff does not have any trouble citing cases that offer little to no analysis for their own conclusions.  *See* Part IV of this Reply, *supra*.

The third case supporting defendants' position is the Fourth Circuit's opinion in *Mackey*. In that case, the court stated: "If [§ 3604] was designed to reach every discriminatory act that might conceivably affect the availability of housing, [§ 3605's] specific prohibition of discrimination in the provision of financing would have been superfluous." 724 F.2d at 423. Defendants previously distinguished plaintiff's cited line of cases concerning insurance redlining, *see* Part IV of this Reply, and plaintiff somewhat justifiably distinguishes *Mackey* on this basis, too. Pl.'s Memo. at 28-29. But whereas plaintiff's cases granted *Chevron* deference to HUD's regulation specifically concerning homeowners insurance, such deference was not required in *Mackey* because that regulation did not exist at the time. *Mackey* turned exclusively on statutory construction. Moreover, whereas *Mackey* clearly opined on § 3604's applicability to housing financing, plaintiff's cases did not.[8]

Finally, the *Webster Bank* case supports defendants' position.[9] Plaintiff argues that *Webster Bank* is inapplicable because the Connecticut Supreme Court supposedly "held that foreclosure is not covered by section 3604 only because foreclosure happens well after a person has acquired a home." Pl.'s Memo. at 31. That is too limited a reading of *Webster Bank*, in which it is stated:

> Thus, this interpretive treatment by the secretary charged with the enforcement of the FHA[], in accordance with the statutory text and otherwise silent legislative history, confirms that 42 U.S.C. § 3605 is the sole FHA[] provision applicable to mortgage servicing and enforcement. We, therefore, disagree with the

---

[8] To the extent it can be construed to the contrary, Judge Easterbrook's statement in *American Family Mutual*, quoted at Pl.'s Memo. at 29-30, warrants a reminder that "even when the literal terms of statutory provisions would allow the specific language to be controlled by the more general, we cannot ignore evidence that Congress intended to address a specific situation through special legislation." *Stewart*, 673 F.2d at 492.

[9] Notably, because it was applying a federal law, the Connecticut Supreme Court applied federal rules of statutory construction in rendering its opinion. It did not use Connecticut rules. *See* 265 Conn. at 554-55, 830 A.2d at 149-50.

> defendant's claim that mortgage servicing and enforcement "otherwise make[s] unavailable or den[ies]" a dwelling or is a "[service]" in connection with a dwelling for purposes of 42 U.S.C. § 3604(f)(1) and (2)."

265 Conn. at 563, 830 A.2d at 155 (alterations in original).

Plaintiff evidently cares to limit the applicability of *Webster Bank* to cases only involving mortgage foreclosures, but the logic and rationale of the case cannot be so cabined. The Connecticut Supreme Court had essentially agreed the operative language "otherwise make unavailable" and "provision of services or facilities in connection with such dwelling" was broad enough to encompass discrimination in mortgage foreclosures **but for § 3605**. The court stated:

> The [defendant borrower's] arguments with respect to § 3604(f)(1) and (2) are, at first blush, linguistically appealing, especially given the ambiguity of the operative statutory terms, namely, "services," or "make unavailable or deny." We conclude, however, that § 3604 of the FHA[], and its reasonable accommodations provision, afford the defendant no relief. Indeed, discrimination in mortgage foreclosures is addressed solely by a different section of the FHA[], namely, 42 U.S.C. § 3605. Put differently, the defendant's proposed application of § 3604 is precluded by the existence of § 3605.

265 Conn. at 557, 830 A.2d at 151.

Examining the language of the opinion, there is no principled reason to limit it to the context of mortgage foreclosures. If a claim of discrimination in the enforcement of mortgage loan agreements falls within the exclusive ambit of § 3605, then a claim of discrimination in the origination (or refusal to originate) mortgage loans must likewise fall within the exclusive ambit of § 3605. That statutory provision does not distinguish between genres of housing finance discrimination. Indeed, the *Webster Bank* court found support in the *Gaona* decision, previously discussed, even though *Gaona* had absolutely nothing to do with foreclosures or the enforcement or servicing of mortgage loans. *See* 265 Conn. at 558, 830 A.2d at 151 (citing *Gaona* as "noting that 42 U.S.C. § 3604 'bars discrimination in sales and rentals, rather than loans'" (quoting 324 F.3d at 1056 n.7)). It is also noteworthy that the Connecticut Supreme Court stated that HUD

"did not contemplate *mortgage related matters* arising under 42 U.S.C. § 3604." 265 Conn. at 561, 830 A.2d at 153-54 (emphasis added).

Plaintiff's misguided efforts notwithstanding, the *Gaona*, *Simms*, *Mackey*, and *Webster Bank* cases continue to support the argument that § 3605 is the sole vehicle for housing finance discrimination claims.

## CONCLUSION

Accordingly, for all the foregoing reasons, and for the reasons set forth in NovaStar's opening Memorandum, the Court should hold that 42 U.S.C. § 3604 does not apply to discrimination in the availability of financing, and plaintiff's claims under that FHA provision should be dismissed with prejudice from the Complaint.

Dated:    Washington, DC                         Respectfully submitted,
          June 22, 2007

                                                 WEINER BRODSKY SIDMAN KIDER PC

                                    By:    /s/ Mitchel H. Kider
                                           Mitchel H. Kider (Bar No. 358531)
                                           David M. Souders (Bar No. 441491)
                                           Brian P. Perryman (Bar No. 491034)
                                           1300 19th Street, NW, Fifth Floor
                                           Washington, DC 20036-1609
                                           Telephone: (202) 628-2000
                                           Facsimile: (202) 628-2011
                                           Email: kider@wbsk.com
                                           Email: souders@wbsk.com
                                           Email: perryman@wbsk.com

F:\98054\054\lbpp1695brf MTD Reply.doc

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of June, 2007, a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss was served via electronic notification upon the following:

John Peter Relman, Esq.
Bradley H. Blower, Esq.
Elena Grigera, Esq.
RELMAN & DANE, PLLC
1225 19th Street, NW, Suite 600
Washington, DC 20036-2456
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
Email: jrelman@relmanlaw.com
Email: bblower@relmanlaw.com
Email: egrigera@relmanlaw.com

/s/ David M. Souders
Mitchel H. Kider (Bar No. 358531)
David M. Souders (Bar No. 441491)
Brian P. Perryman (Bar No. 491034)
WEINER BRODSKY SIDMAN KIDER PC
1300 19th Street, NW, Fifth Floor
Washington, DC 20036-1609
Telephone: (202) 628-2000
Facsimile: (202) 628-2011
Email: kider@wbsk.com
Email: souders@wbsk.com
Email: perryman@wbsk.com