IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL COMMUNITY REINVESTMENT COALITION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-861 (RCL) |
| NOVASTAR FINANCIAL, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM AND ORDER**

Before the Court is defendant W. Lance Anderson's Motion [63] to Dismiss the plaintiff's complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Upon consideration of the motion, the opposition, the reply thereto, and the record herein, the Court will deny defendant's motion.

**I. BACKGROUND**

Plaintiff National Community Reinvestment Coalition alleges violations of the federal Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* ("FHA") by defendants NovaStar Mortgage, Inc. ("NMI") and its parent company, NovaStar Financial, Inc. ("NFI") (collectively, "NovaStar"). Recently, plaintiff amended its complaint to add W. Lance Anderson ("Anderson"), the President, Chief Operating Officer, and co-founder of NFI and the President of NMI, as an individual defendant.

Anderson has moved to dismiss plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Specifically, Anderson

alleges that his involvement in the making and implementation of NovaStar's policies against making loans secured by homes on Indian reservations, homes used for adult foster care, and row houses in Baltimore, Maryland was limited to his capacity as a corporate officer.  (*See* Def.'s Mot. to Dismiss 2-3.)  Anderson asserts that for the foregoing reason, combined with the fact that he is a nonresident who has no substantial contacts with the District of Columbia, the Court should decline to exercise personal jurisdiction over him.  (*See id.* at 3.)  Because Anderson's contacts with the District are all in his corporate capacity, defendant argues, the fiduciary shield doctrine makes jurisdiction over him improper.  Plaintiff argues in response that Anderson can be tried as a defendant in his personal capacity under the "more an employee" exception to the fiduciary shield doctrine.  (*See* Pl.'s Opp'n to Mot. to Dismiss 1-2.)

## II. ANALYSIS

**A. Legal Standard**

When personal jurisdiction is challenged, the plaintiff bears the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over each individual defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).  The plaintiff must allege specific facts that connect the defendant with the forum.  *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  The plaintiff may not aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant.  *See Rush v. Savchuk,* 444 U.S. 320, 331-32 (1980) (rejecting aggregation of co-defendants' forum contacts in determining personal jurisdiction because "the requirements of *International Shoe* must be met as to each defendant over whom a… court exercises jurisdiction").  When contemplating personal jurisdiction, the Court is not required to

treat all of the plaintiff's allegations as true, but "may receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n. 4 (D.D.C. 2000) (Kessler, J.); *see also Capital Bank Int'l, Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003) (Urbina, J.); *Novak-Canzeri v. Al Saud*, 864 F. Supp. 203, 206 (D.D.C. 1994) (Friedman, J.) ("the Court must accept Plaintiff's claims as true in ruling on a 12(b)(2) motion, unless they are directly contradicted by an affidavit").

**B. Personal Jurisdiction**

There are two variants of personal jurisdiction: "(1) general, 'all purpose' adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific jurisdiction to entertain controversies based on acts of a defendant that touch and concern the forum." *Kopff v. Battaglia,* 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (Bates, J.) (citing *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)). General jurisdiction requires that the defendant's contacts within the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). Alternatively, the District of Columbia may exercise specific jurisdiction over a defendant if the plaintiff demonstrates that (1) the District of Columbia's long arm statute, D.C. Code § 13-423, authorizes jurisdiction, and (2) the exercise of jurisdiction comports with the federal requirement of constitutional due process. *D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008) (Bates, J.). The District of Columbia long-arm statute provides:

> A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's-

>(1) transacting any business in the District of Columbia;
>
>(2) contracting to supply services in the District of Columbia;
>
>(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
>(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code. § 13-423(a)(1)-(4).

### 1. *The Court lacks general jurisdiction over Anderson*

Plaintiff has not, and cannot, establish a basis for general personal jurisdiction over Anderson. A District of Columbia court may exercise general personal jurisdiction "as to any claim for relief" over a person who is domiciled in or maintains a principal place of business in the District of Columbia. D.C. Code § 13-422. Anderson resides in Kansas. (Am. Compl. ¶ 12.) He does not own any real property in the District of Columbia nor does he maintain an office in the District of Columbia, and he works for NFI and NMI out of their offices in Kansas City, Missouri. (Anderson Decl. ¶ 2-6.) Plaintiff has thus alleged "no facts to satisfy the steep requirement of continuous and systematic contacts with the District of Columbia sufficient to impose general jurisdiction." *D'Onofrio*, 534 F. Supp. 2d at 90.

### 2. *The Court may exercise specific jurisdiction over Anderson because the "more than an employee" exception to the fiduciary shield doctrine applies to Anderson*

Plaintiff can establish a basis for specific personal jurisdiction over Anderson based on the "more than an employee" exception to the fiduciary shield doctrine. The fiduciary shield

4

doctrine counsels that "personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity." *Wiggins v. Equifax*, 853 F. Supp. 500, 503 (D.D.C. 1994) (Lamberth, J.).  When contacts with the forum are exclusively in relation to the defendant's corporate responsibility, the defendant is "clearly not 'doing business' with the District of Columbia.  *Id*.  It is important to note that "as a general rule, courts cannot exert jurisdiction over individual corporate officers or employees 'just because the court has jurisdiction over the corporation.'"  *Kopff*, 425 F. Supp. 2d at 84 (quoting *Flocco v. State Farm Mu. Auto. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000)).  The plaintiff therefore must demonstrate that the individual defendants are subject to personal jurisdiction "apart from any jurisdiction that might exist over their corporate-entity employers."  *D'Onofrio*, 534 F. Supp. 2d at 90-91 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984)).

     For example, the fact that two employees of a company that had contacts with the District "may have acted in a supervisory capacity over persons with contacts with the District… fail[ed] to create personal jurisdiction." *Wiggins*, 583 F. Supp. at 503.  Similarly, another judge in this Court declined to exercise jurisdiction over a company's Chairman and CEO who was responsible for setting policies and procedures for the company and was involved in the company's day-to-day employment decision-making processes, even though the plaintiff complained about an employment decision, because "[a]ll of these alleged jurisdictional facts involve[d] the individual defendants' official duties for [the corporation] – setting policies, communicating with employees, conducting investigations, and making employment decisions." *Richard v. Bell Atlantic Corp., Inc.*, 976 F. Supp. 40, 49-50 (D.D.C. 1997) (Urbina, J.).  The Court pointed out that the plaintiffs had failed to plead sufficient jurisdictional facts because

"acts committed within the scope of employment cannot be imputed to the individual defendants to establish personal jurisdiction over them." *Id.* at 50 (citing *Keeton*, 465 U.S. at 781 note 13; *Wiggins*, 853 F. Supp. at 503). It is clear from these decisions that an individual's role as a corporate officer, without more, is not a sufficient basis for exercising personal jurisdiction over the officer in his individual capacity.

However, the fiduciary shield doctrine is inapplicable when the defendant is found to be "more than an employee" of the corporation. Under the Due Process Clause of the Fifth Amendment, this Court can exercise jurisdiction over Anderson if he has purposefully established "minimum contacts with [the District of Columbia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). For example, the District of Columbia Superior Court found personal jurisdiction over two corporate officers in their individual capacities because they were "the only corporate officers [of the corporation] and set company policies and procedures," were "active in day-to-day operations of the company," and had direct "involvement and supervision of all aspects of the company." *Covington & Burlington v. Int'l Marketing & Research, Inc.*, Civ. No. 01-4360, 2003 WL 21384825 at *6 (D.C. Super. 2003). The Superior Court in that case concluded that the corporate officers were "more than mere employees" and so they were "not insulated from [the] Court's jurisdiction." *Id*. In its holding that the corporate officers could be sued in their individual capacities, the Superior Court relied upon the determination by the D.C. Court of Appeals that "a corporate officer may be held liable for acts of the corporation 'when there is an act or omission by the officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense.'" *Id.* (citing *Vuitch v. Furr*, 482

A.2d 811, 821 (D.C. 1984)).  Another judge of this Court has twice recognized *Covington*, but in both of those cases he determined that the exception did not apply to the relevant facts.  In *Kopff v. Battaglia*, a "chief programmer" of a blast-fax advertising firm was found to not be as integrally involved with the company as the defendants in *Covington*.  He was not an officer and he did not have "any role in directing or controlling company policy."  *Kopff*, 425 F. Supp. 2d at 85.  Another judge in this Court held that the Court could not properly exercise personal jurisdiction over two nonresident corporate executives when all of the assertions made against the executives in the plaintiff's complaint were actions taken pursuant to the executives' corporate duties and responsibilities.  *D'Onofrio*, 534 F. Supp. 2d at 92.  The executives' corporate duties and responsibilities were not enough to satisfy an exercise of personal jurisdiction under subsection (a)(1) of the District of Columbia's long-arm statute.  *Id.* at 93.

   Plaintiff argues that jurisdiction over Anderson can be achieved under subsection (a)(1) of the long-arm statute.  Subsection (a)(1) "is given an expansive interpretation that is coextensive with the due process clause."  *Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quoting *Mouzavires v. Baxter*, 434 A.2d 988, 992 (D.C. 1981)).  Therefore, because this Court has already held that the due process clause has been satisfied through NMI's transactions with District residents, subsection (a)(1) of the longarm statute is satisfied by those transactions as well.  Plaintiff asserts that the Court's finding in the March 27 Order [54] that the NovaStar Defendants received thousands of loan applications and made hundreds of loans in the District of Columbia also satisfies the "doing business" requirement subsection (a)(1) with respect to Anderson.  (*See* Pl.'s Opp'n to Def.'s Mot. to Dismiss 4 [65].)  However, the loan applications represent NovaStar's contacts with the District of Columbia and are only relevant in the question of whether Anderson has sufficient contacts with the forum if the fiduciary shield does not

protect Anderson from being subject to the Court's jurisdiction in his personal capacity. As a long line of cases has consistently held, "when there are no allegations [in the complaint] that a nonresident defendant's contacts with a jurisdiction were for the purpose of transacting business as an individual, but rather were only to perpetuate a corporation's business, that defendant cannot be sued individually under the 'transacting business' prong of the long-arm statute." *Flocco v. State Farm Mutual Auto. Ins. Co.*, 752 A.2d 147, 162 (D.C. 2000) (citing *Quinto v. Legal Times of Washington, Inc.*, 506 F.Supp. 554, 558 (D.D.C. 1981) (Flannery, J.); *Wiggins*, 854 F.Supp. at 503). Thus, Anderson is not transacting any business in his personal capacity that would subject him to subsection (a)(1) of the long-arm statute, but absent the fiduciary shield doctrine, the Court can attribute NFI and NMI's connections with the District of Columbia to Anderson. Defendant companies clearly have such contacts: between 1999 and 2007 NMI received 3,021 loan applications from District of Columbia residents, and 1,230 of those applications were approved with loans made. (Pl.'s Reply Ex. D [30-5] (Decl. of Caitlin Parton) (reviewing Home Mortgage Disclosure Act records).)

      The only fact alleged in plaintiff's amended complaint regarding Anderson is that he "is the President, Chief Operating Officer, and co-founder of NovaStar Financial, Inc. Anderson is also the President of NovaStar Mortgage, Inc. Anderson personally developed and implemented the discriminatory lending policies challenged in this First Amended Complaint." (Am. Compl. ¶ 12.) However, the Court may receive and weigh affidavits and other relevant matter to assist it in determining jurisdictional facts. *See D'Onofrio*, 534 F. Supp. 2d at 89-90. Based on the interrogatory answers that Anderson filed on May 15, 2009, Anderson argues that this Court may not exercise personal jurisdiction over him. Anderson stated in his interrogatory responses that he has "no knowledge of any personal involvement in the original adoption of the policy

regarding loans secured by properties located on Indian reservations or in Indian country," "no knowledge of any personal involvement in the original adoption of the policy regarding loans secured by properties used for adult foster care," and, at best, vague recollections regarding NMI's decision not to lend on row homes in Baltimore, Maryland. (*See* Resp. to Interrog. Nos. 2, 4. 6 [65-3].) Anderson also notes that he has not personally had any communications with investors regarding whether or not they would purchase loans secured by properties located on Indian reservations or in Indian country, properties used for adult foster care, or row houses in Baltimore, Maryland. (*See* Resp. to Interrog. No. 8 [65-3].) Since 1996, all of Anderson's travel to the District of Columbia has been in connection with his responsibilities as an officer of NFI and NMI. (*See* Resp. to Interrog. No. 10 [65-3].) Anderson estimates that his business travel to the District of Columbia varied from year to year and that the number of trips he took ranged from not one in a single year to as many as three per year. (*See id*.)

However, Anderson's interrogatory answers directly contradict his deposition testimony from May 8, 2009. In his deposition testimony, Anderson admits that he personally brought the Indian reservation and adult foster care restrictions to NMI from his previous employer, another mortgage lender, and that he was personally involved in the decision to exclude row homes in Baltimore as collateral for loans. (*See* Pl.'s Notice of Supplemental Evidence, Ex. A, May 9, 2009 Dep. Tr. Of W. Lance Anderson [66-2] at 48-52, 92-93.) Anderson testified that in 1996, when he was president of Saxon Mortgage, Inc., he and a colleague, Scott Hartman, decided to start NFI. (*Id.* at 12-13.) Anderson and Hartman subsequently co-founded NFI and its subsidiary NMI in the summer of 1996 and were its first two employees. (*Id.* at 14-15.) Anderson further testified in his deposition that the policies of Saxon Mortgage, where he previously served as president, were the "core template" for NMI's "Program Manual." (*Id.* at

9

48-50.)  The Program Manual contained the restrictions on Indian reservation lending and adult foster care lending, which had also been contained in Saxon Mortgage's policies.  (*Id.* at 51-52.)  Anderson also testified that he and another employee, Manny Palazzo, were the only creators of the original NMI Program Manual that included these restrictions.  (*Id.* at 49.)  Anderson confirmed that the restriction on properties located on Indian reservations or used for adult foster care were in NMI's first Program Manual in 1996 and remained in the Program Manual until 2008 when NMI stopped making loans.  (*Id.* at 51-53.)  Anderson's deposition testimony also reveals that he was one of three people on NMI's Credit Committee who discussed whether to impose restrictions on Baltimore row houses in 2005.  (*Id.* at 92-93.)  Anderson admitted that he and the other members of the Credit Committee "felt it was [their] responsibility not to lend in that area [Baltimore row houses]" given the "very large fraud ring going on at that time in Baltimore."  (*Id.*)

It is clear from the deposition transcript and Anderson's interrogatory answers that Anderson's testimony is entirely at odds with representations in his reply brief that he was not responsible for the discriminatory policies challenged in the Amended Complaint.  In determining whether a basis for the exercise of personal jurisdiction exists, "factual discrepancies appearing in the record must be resolved in favor of the plaintiff."  *Crane*, 894 F. 2d at 456 (*citing Reuber v. United States*, 750 F. 2d 1039, 1052 (D.C. Cir. 1984)).  The allegations in plaintiff's Amended Complaint and Anderson's deposition testimony admitting his responsibility for the challenged policies should therefore be regarded as true for the purposes of determining whether the Court has personal jurisdiction over Anderson.  Anderson's testimony clearly shows that he was in a position of authority at both NFI and NMI and was directly

involved in creating, implementing, and maintaining the three policies challenged in the Amended Complaint.

As a result of the significant influence that he exerts over the NovaStar defendants' policies, procedures, and operations, and his involvement in the creation, implementation, and maintenance of the three policies at issue, Anderson can be considered "more than an employee" of the NovaStar entities and therefore may be held liable in his individual capacity for the allegedly discriminatory policies. The "more than an employee" exception raised by plaintiff comes into play in the instant case because Anderson is more like the officers in *Covington* than the employees in *Kopff* and *D'Onofrio*. Although Anderson is not the sole officer of the defendant entities, as was the case in *Covington*, Anderson, as president, does appear to exert significant influence over the NovaStar defendants' policies, procedures, and operations. Furthermore, the allegedly discriminatory policies' existence is at the core of the instant case. Unlike in *D'Onofrio* and *Richard*, in which the corporate officers could not be held liable in their personal capacities for directing their subordinates, Anderson was not joined as a defendant for directing subordinates to implement the policies and procedures, but rather because he played a role in the initial creation of the policies at issue. Moreover, while Anderson's situation appears to parallel that of the chairman and CEO in *Richard*, where the court declined to exercise personal jurisdiction over the chairman and CEO of a company because all of the alleged jurisdictional facts involved the defendant's official duties for the corporation, in that case the "more than an employee" exception to the fiduciary shield had not yet been recognized and was not even discussed in the case. *See Richard*, 976 F. Supp. at 49-50. Given the similarities between Anderson and the officers in *Covington*, Anderson falls under the "more than an employee" exception to the fiduciary shield doctrine. The fact that Anderson played a role in the

creation of the corporate policies at issue in the instant suit "logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense," supporting his designation as "more than an employee" of NovaStar. *See Vuitch*, 482 A.2d at 821. This Court can thus exercise personal jurisdiction over Anderson.

### III. CONCLUSION & ORDER

For the foregoing reasons, it is hereby

ORDERED that defendant W. Lance Anderson's Motion [63] to Dismiss plaintiff's complaint be and is hereby DENIED.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, June 22, 2009.